COLYAR *v*. WHEELER *et al.* ,

(*Nashville.   December Term, 1902.*)

1.  **ACTIVE TRUST.** Is created by postnuptial settlement and
    conveyance of wife's property to a trustee for her separate use.
    Where a husband and wife by postnuptial settlement conveyed
    all of the wife's property to a trustee, reciting that the purpose
    and intent of the deed were that said property be vested in and
    held by said trustee for the sole and separate use of the wife,
    such conveyance created a special or active trust, and imposed
    upon the trustee the duty of preserving the trust property for
    the wife's separate use during coverture.   (*Post, pp.* 59-63.)

    Cases cited:   Jourolmon v. Massengill, 86 Tenn., 100; Henderson
    v. Hill, 9 Lea, 32.

2.  **MORTGAGE.** Of separate estate, held by trustee with power
    of disposition in wife on consultation with trustee, is void,
    unless trustee is joined therein.
    Where after a postnuptial settlement conveying to and vesting
    in a trustee the legal title of the wife's property for her sole
    and separate use, "with absolute right of disposition as she may
    choose upon consultation and getting advice from said trustee,"
    the husband and wife executed mortgages covering the wife's
    separate estate in which the trustee did not join, and in re-
    spect to which he was not consulted, such mortgages were void,
    the words "upon consultation and getting advice from said
    trustee" being equivalent to the "consent of the trustee," which
    must be attested by his signature to the instrument; a contrary
    construction would defeat the purpose of the trust created for

the protection of the estate of the wife from the domination and improvidence of the husband. (*Post, pp.* 59-66.)

Cases cited: Deaderick v. Armour, 10 Humph., 588; Pooley v. Webb, 3 Coldwell, 599.

## FROM WILSON.

Appeal from Chancery Court of Wilson County—J. S. GRIBBLE, Chancellor.

MCCLAIN & MCCLAIN, for Colyar.

N. G. ROBERTSON and J. C. SANDERS, for Wheeler et al.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The validity of defendants' title to the real estate in controversy depends upon the character of the following postnuptial settlement, namely:

"We, A. S. Colyar, Jr., and his wife, Sallie S. Scoby, both of the county of Wilson and State of Tennessee, in consideration of a marriage between them, celebrated on the 29th April, 1891, and in consideration of ante-nuptial agreement entered into verbally and by correspondence, do now make and enter into this mutual contract, to wit:

"We appoint Daniel J. Burton, trustee for the said Sallie S. Colyar, and hereby convey to him in trust for the purposes of this deed, all of the following described property, none of which has been reduced to the possession of the said A. S. Colyar, Jr., to wit:

"The said Sallie S. Colyar's [interest] in what is known as the home place in Wilson county, Tennessee, on which her mother lives, and on which she now resides, together with all the stock on the farm that belongs to the said Sallie S. Colyar; also any other personal property which she now has or may have in the future. The purpose and intent of this deed is that said property is invested in said trustee that he may hold the legal title for the sole and separate use, with the absolute right of disposition as she may choose upon consultation and getting advice from said trustee.

"[Signed]                          SALLIE S. COLYAR,
                                   "A. S. COLYAR, JR."

It appears from the record that at the date of her marriage with A. S. Colyar, Jr., Mrs. Colyar was the owner of two shares, or two-sixths, in remainder of a valuable tract of land in Wilson county, Tenn., containing about 175 acres, comprising her mother's homestead and dower interest in the lands of her deceased husband. The mother of Mrs. Colyar died since the latter's marriage with A. S. Colyar, Jr.

It further appears that on the 11th of October, 1897, Mrs. Colyar and her husband, A. S. Colyar, Jr., executed to A. M. Colyar, now deceased, a mortgage, con-

veying her interest in such realty in Wilson county to secure a debt in favor of A. D. Marks for ——— dollars, and also an indebtedness due C. S. Briggs, amounting to $65.

It also appears that on the 20th of October, 1897, Mrs. Colyar and her husband executed a second mortgage on her interests in said land to A. D. Marks, trustee, to secure two notes in favor of Hamilton Parks for $250 each.  A. D. Marks joined in the trust deed, waiving his prior lien secured in the trust deed of October 11, 1897.

It is also shown that default was made in paying the notes for $500 due Hamilton Parks, and thereupon the trustee, Marks, in conformity with the terms of the trust deed, advertised said property, and sold it at public vendue to the defendants T. C. Wheeler and N. G. Robertson.  The trustee, Marks, executed to said purchasers a deed, which is duly recorded in the register's office of Wilson county.

Complainant's position is that the mortgages and the deeds to Wheeler and Robertson were void, for the reason that the legal title to the property was in D. J. Burton, her trustee, under the postnuptial settlement, and could not be conveyed without her consent, and that said trustee had at no time been consulted in respect of said trust deeds or other conveyances.

It is stated in the opinion of the court of chancery appeals that this postnuptial settlement was entered into the day after complainant's marriage, at the in-

stance of the father of the husband, Col. A. S. Colyar, who told his daughter-in-law that his son would squander all her property unless the same was properly protected. It is obvious that the only duty imposed on the trustee is to hold and preserve the property for the sole and separate use of this married woman during coverture, and ordinarily this duty creates an active trust.

Says Mr. Perry, in his work on Trusts, 310: "If an estate be given to trustees upon a trust for a married woman 'for her sole and separate use,' and 'her receipts alone to be sufficient discharge,' or if the trust be to 'permit and suffer a *feme covert* to receive the rents to her separate use,' the legal estate will vest in the trustees, and the statute will not execute it in the *cestui que trust*. * * * Any words that show an intent to create an estate or a trust for the sole and separate use of a married woman will have the same effect."

In *Jourolmon* v. *Massengill*, 86 Tenn., 100, 5 S. W., 719, it was said, viz.: "That the trust would be voted by common consent, if the object of this trust was the protection of the estate of a married woman, or other person not *sui juris*. So it has been said that a trust in fee, created to protect the estate for a given time, and to preserve contingent remainders, is a special or active trust, not within the statute of uses, nor executed in the beneficiaries under the law as settled in this State." *Henderson* v. *Hill*, 9 Lea, 32.

In the case of *P. J. O'Brien* v. *Mrs. Margaret O'Keefe* (MSS. opinion, Nashville, Dec. Term, 1901), in consid-

ering this subject it was said, viz.: "The court is of opinion that in the case of a married woman, when the conveyance is made to a trustee for her benefit, a necessary implication arises that it was the intention of the grantor to create a separate estate, and that the trustee should hold the estate for the benefit of the married woman; and this constitutes in itself an active trust, so as to prevent the operation of the statute."

Again, in the same case it was said, viz.: "It is true the interposition of a trustee is not absolutely necessary under our authorities to create a separate estate in a married woman, but it is a proper method of doing so, and, when a trustee is thus interposed and provided by the conveyance, it is an indication that it was the intention of the grantor in that way and by that means to preserve the estate, and that in the case of a conveyance for the benefit of a married woman this imposes an active duty upon the trustee, and makes an active trust outside of the statute."

Conceding, then, that an active trust was created by the conveyance of the title to Mrs. Colyar's property to a trustee for her sole and separate use, how is this language affected by the provision granting to Mrs. Colyar "the absolute right of disposition as she may choose upon consultation and getting advice from said trustee?" The court of chancery appeals was of opinion that this last clause, giving to Mrs. Colyar the absolute right of disposition, destroyed the trust, and that the words "upon consultation and getting advice from

the trustee" were merely directory. The argument is that the trustee is not required to join in a conveyance by the wife, and hence, after consultation and advice with the trustee, she may convey independent of the trustee's concurrence or signature.

It is argued that when Mrs. Colyar exercises the right of disposition the trust is ended. The trustee has no power except to counsel and advise.

In the case of *Deadrick* v. *Armour,* 10 Humph., 588, it appeared that an antenuptial settlement was made, in which the prospective wife conveyed to a trustee, to her sole and separate use, all her property, real and personal, with the right to sell, use, and dispose of any or all of the aforesaid property, or her interest therein, as she may think fit, "by and with the consent of the trustee." The settlement then provided for the disposition of certain remainders, but it was contended that the remainders were void because the wife was given absolute disposition of the property, which would be inconsistent with the idea of a gift in remainder. The court said:

"Where the consent of any person is required, it is evident the principal object is to protect the person to whom the power is given from a hasty and unadvised disposition of the property; and, where trustees have a discretionary power to consent or not, a court of equity has no power to control or enforce them. Now," continued the court, "in the deed before us it is very evident it was the intention that Eliza G. should have the

sole and separate use of the property as against her intended husband, and, by and with the consent of the trustee, power is given to sell and dispose of the property or her interest therein as she might think fit. The intention was to secure said Eliza by deed, whilst she had the power to make a deed, against the power and influence of her husband, and to interpose for her protection the sound discretion and prudence of a trustee to be exercised against any rash or ill-advised disposition of her property. The reason of course, for this rule is that it is necessary to the valid execution of a power that the mode of circumstances prescribed in the deed or will shall be strictly pursued, and therefore, if it be required to be executed by writing, a parol disposition will be invalid; if by deed, a disposition by will is invalid; if by the consent of a particular person, a disposition without such consent is void." 2 Sugden on Powers, 334-341; *Pooley* v. *Webb,* 3 Cold., 599.

The question, then, for our determination is whether Mrs. Colyar, by virtue of the postnuptial settlement, has an absolute or a restricted and qualified power of disposition of the property. The language is that the trustee may hold the legal title for the sole and separate use, with the absolute right of disposition as she may choose, upon "consultation and getting advice from the trustee."

We are of opinion there can be no exercise of this power of disposition unless it appears that the convey-

110 Tenn—5

ance was made upon consultation with and advice of the trustee. In our opinion, these words are equivalent to "consent of the trustee," and his consent must be attested by his signature to the instrument. These trusts are created for the protection of married women, who are incapable of protecting themselves against the domination and improvidence of their husbands. The words of the trust will be strictly construed, and given such meaning as will accomplish the purpose for which it was created. The construction given this instrument by the chancellor and court of chancery appeals destroys its entire efficacy, and renders it nugatory.

We are of opinion both courts were in error. Their decrees will be reversed, the demurrers overruled, and the cause remanded.