Billy ANDERSON

v.

**WESTFIELD GROUP.**

Supreme Court of Tennessee,
at Nashville.

June 3, 2008 Session.

Aug. 12, 2008.

---

Randolph A. Veazey, Nashville, Tennessee, for the appellant, Westfield Group.

Russell D. Hedges, Tullahoma, Tennessee, for the appellee, Billy Anderson.

**OPINION**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., and FRANK F. DROWOTA, III, Sp. J., joined.

This workers' compensation appeal involves an employer's liability for medical benefits stemming from injuries that occurred subsequent to an original compensable injury. Following a 2001 work-related injury to his elbow, the employee and his employer settled the employee's claim for workers' compensation benefits. The settlement obligated the employer to pay future medical bills resulting from the elbow injury. Shortly after undergoing cor-

rective surgery on the injured elbow in 2004, the employee burned his hand while cooking at home. While recuperating from the burn to his hand, he suffered additional injuries to his hand in a fall near his sister's home. The employee filed a petition seeking to recover medical expenses for these two injuries to his hand on the basis that the medical expenses associated with these injuries were the direct and natural consequence of the original work-related injury to his elbow. The trial court found that the medical expenses sought by the employee were the result of intervening causes, namely the employee's own negligence, and denied the petition. The Special Workers' Compensation Appeals Panel reversed, finding that the subsequent injuries were the direct and natural consequence of the original compensable injury and that there were no intervening causes. Upon review of the record and applicable law, we hold that the injuries to the employee's hand were due to his own negligence, and therefore, the employer is not required to pay the medical bills associated with those injuries. Accordingly, we reverse the Panel's decision and affirm the judgment of the trial court.

### Factual and Procedural Background

The record before us reveals that the employee, Billy Anderson, age forty-five at the time of trial, worked for the employer, RBM Welding Steel. On December 6, 2001, while performing his duties for RBM

Welding Steel, the employee suffered a work-related fracture to his left elbow.[1] He subsequently had surgery to "reduce the fracture and make it nondisplaced." Following a period of recovery, the employee was released to return to work with instructions to wear a brace on his elbow. Thereafter, he resumed his duties with the employer.

On August 18, 2003, the employee and the employer's workers' compensation insurance carrier, Westfield Group, reached a settlement of 44% permanent disability to the employee's left arm based on the 2001 injury. The settlement provided that the employer's insurer would pay "reasonable, necessary, authorized and compensable future medical benefits" stemming from the compensable elbow injury.[2] The settlement agreement designated the employee's treating orthopedic surgeon, Dr. Douglas Freels, as the authorized physician for future medical treatment arising from the elbow injury.

Ten months after the settlement, in June 2004, the employee returned to see Dr. Freels complaining of pain and decreased range of motion in his left elbow. Following a CT scan and an MRI which revealed "loose bodies" in the employee's elbow, Dr. Freels performed a second surgery on October 26, 2004, to remove bone fragments from the elbow. When the employee awoke from the surgery, he immediately noticed that he had no feeling in two fingers on his left hand.[3] According to

---

1. This case involves only the causal relationship and compensability of two post–2003 settlement injuries. Unlike most workers' compensation records reviewed by this Court, the record in this case contains no information concerning the employee's work or educational history. Nor does the record indicate what the employee's duties were while he was employed by RBM Welding Steel or how the original 2001 injury to his elbow occurred.

2. We note that the rights of parties in workers' compensation cases to settle the issue of future medical benefits is limited by statute. *See* Tenn.Code Ann. § 50–6–206(2) (2005) (stating "the parties shall not be permitted to compromise and settle the issue of future medical benefits to which an employee is entitled pursuant to this chapter" unless certain conditions are satisfied).

3. He described them as "my ring finger [and] my pinky."

Dr. Freels-the only medical expert to testify in this case-the numbness in the employee's fingers was due to an ulnar nerve injury, a complication of the second surgery.[4] The employee had limited loss of sensation in his fingers prior to the second surgery, but the second surgery resulted in a marked increase in loss of sensation, leaving two fingers completely numb.

In December 2004, approximately six weeks after undergoing the second surgery on his elbow, the employee was cooking hamburgers at home when he dropped the skillet and hamburgers on the floor. He was using his right hand to cook because his left arm was still bandaged from surgery and needed to be propped up. As he bent over to retrieve these items, he placed his left hand on what he thought was the edge of the stove in order to help keep his balance. Bent over to the floor, he smelled his hair and skin burning. Standing up, he realized he had placed his left hand on the hot burner of the stove. Due to the numbness in his fingers, he felt no pain as his flesh burned, and he sustained a severe burn to his little finger. The next day, he went to see Dr. Freels. Dr. Freels initially treated the burn conservatively, but the employee's finger failed to heal due to the severity of the burn. According to the employee, his finger was "rotting off." As the employee's skin deteriorated, the bone in his finger became exposed. On February 15, 2005, Dr. Freels amputated part of the little finger and placed a skin graft on the remaining part of the finger.

The employee moved in with his sister while recovering from the amputation and skin graft surgery. On February 24, 2005, the employee decided to take a walk by a creek near his sister's house after it had just stopped raining. When he attempted to step over a wet log, he slipped and fell. His left hand struck a tree. The fall caused the recent skin graft on his finger to burst open. The employee returned to Dr. Freels, who referred him to a plastic surgeon. The plastic surgeon performed an additional surgery, removing the first skin graft and then sewing the remaining part of the little finger to the ring finger to permit skin to grow over the site of the amputation. At the time of trial, the employee's two fingers were still sewn together.

Relying upon the terms of the parties' 2003 settlement agreement, the employee filed a petition seeking payment of medical benefits arising from the burn and fall injuries to his hand.[5] The employer denied responsibility for these injuries, asserting that the injuries to the employee's hand did not arise out of his employment and were not a direct and natural consequence of the original compensable injury to his elbow.

Following an evidentiary hearing at which the employee was the only in-court witness, the trial court denied the employee's petition on the basis that the burn and fall injuries to his hand were the result of independent intervening causes, specifically his own negligence. The Special Workers' Compensation Appeals Panel reversed. Based upon Dr. Freels's opinion that the numbness in the employee's hand resulted from the second elbow surgery, which in turn resulted from the original work-related elbow injury, the Panel con-

---

4. The ulnar nerve is one of the major nerves located in the arm and hand that provides movement and control of the fingers. *See Stedman's Medical Dictionary* 942 (5th Unabridged Lawyer's Ed.1982).

5. The employer has paid the medical expenses associated with the October 2004 surgical procedures on the employee's elbow. Thus, this appeal involves only the medical expenses incurred in treating the employee's subsequent injuries to his hand.

cluded that the injuries to the employee's hand were the direct and natural consequence of the prior work-related injury. Accordingly, the Panel found that the employer was liable for the medical expenses relating to the burn injury and the subsequent fall over the log.

The employer asserts in this Court that the Appeals Panel erred in finding that the employee's hand injuries were the direct and natural consequence of the work-related injury to his elbow.[6] The employer argues that there were independent intervening causes, namely the employee's own negligence, which should relieve it of liability for the medical expenses stemming from the hand injuries. In response, the employee contends that there is a causal connection between his compensable elbow injury and his subsequent hand injuries, and therefore, the employer should be required to pay medical benefits for those subsequent injuries. For the reasons explained below, we disagree with the employee.

### Applicable Law

■■■ This Court's review of decisions in workers' compensation cases is governed by Tennessee Code Annotated section 50–6–225(e)(2) (Supp.2007), which provides that appellate courts must "[r]eview . . . the trial court's findings of fact . . . de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." As this Court has observed many times, reviewing courts must conduct an in-depth examination of the trial court's factual findings and conclusions. *Wilhelm v. Krogers,* 235 S.W.3d 122, 126 (Tenn.2007). When the trial court has seen and heard the witnesses, considerable deference must

be afforded the trial court's factual findings. *Tryon v. Saturn Corp.,* 254 S.W.3d 321, 327 (Tenn.2008). No similar deference need be afforded the trial court's findings based upon documentary evidence such as depositions. *Glisson v. Mohon Int'l, Inc./Campbell Ray,* 185 S.W.3d 348, 353 (Tenn.2006). Similarly, reviewing courts afford no presumption of correctness to a trial court's conclusions of law. *Perrin v. Gaylord Entm't Co.,* 120 S.W.3d 823, 826 (Tenn.2003).

The statutory requirements that a compensable injury arise out of and occur in the course of the employment have been the subject of extensive litigation in Tennessee and elsewhere. *See* Tenn.Code Ann. § 50–6–102(13) (2005) (stating that to be eligible for workers' compensation benefits, an employee must suffer an "injury by accident arising out of and in the course of employment"). Our state is by no means unique in having adopted these two requirements, for nearly all states require that the injury arise out of and occur in the course of the employment. 1 *Larson's Workers' Compensation Law* § 3.01 (2004). "Indeed, the bulk of workers' compensation litigation [nationwide] centers on these two requirements." *Blankenship v. Am. Ordnance Sys.,* 164 S.W.3d 350, 354 (Tenn.2005). As one commentator has observed, " '[f]ew groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation.' " *Id.* (quoting 1 *Larson's Workers' Compensation Law* § 3.01 (2004)).

■■■ In Tennessee, as in most other jurisdictions, the statutory requirements that the injury arise out of and occur in the course of the employment are not syn-

---

6. The Appeals Panel also found that the employee's notice of appeal was timely filed and the employee was not liable for the costs of

post-trial mediation. Those findings have not been challenged before this Court.

onymous. *Glisson*, 185 S.W.3d at 353. An injury occurs in the course of employment if it takes place while the employee is performing a duty he or she is employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn.1993). This requirement is satisfied when the injury "takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." 1 *Larson's Workers' Compensation Law* § 12 (2004). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Wilhelm*, 235 S.W.3d at 127.

In contrast, the "arising out of employment" requirement refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn.1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn.2005). The injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Thornton v. RCA Serv. Co.*, 188 Tenn. 644, 647, 221 S.W.2d 954, 955 (1949). Accordingly, " 'an injury purely coincidental, or contemporaneous, or collateral, with the employment ... will not cause the injury ... to be considered as arising out of the employment.' " *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 137, 270 S.W.2d 389, 390 (1954) (quoting *Scott v. Shinn*, 171 Tenn. 478, 482–83, 105 S.W.2d 103, 105 (1937) (first alteration in original)).

Equally well-established is the general rule that a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the " 'direct and natural result' " of a compensable inju-

ry. *Rogers v. Shaw*, 813 S.W.2d 397, 399–400 (Tenn.1991) (quoting 1.A. Larson, *The Law of Workmen's Compensation* § 13.11 (1990)). The rule, commonly referred to as the direct and natural consequences rule, has been stated as: "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." 1 *Larson's Workers' Compensation Law* § 10 (2004). Consequently, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Id.* at § 10.01. Thus, for example, an injured worker may recover for a new injury or an aggravation of a compensable injury resulting from medical treatment on the theory that "the initial injury is the cause of all that follows." *McAlister v. Methodist Hosp. of Memphis*, 550 S.W.2d 240, 245 (Tenn.1977); *see Rogers*, 813 S.W.2d at 399 (stating "death or disability due to a poor result of treatment, or complications of treatment, or negligent treatment of a work-related injury or disease is compensable"). The rationale for the rule is that the original compensable injury is deemed the "cause of the damage flowing from the subsequent" injury-producing event. *Revell v. McCaughan*, 162 Tenn. 532, 538, 39 S.W.2d 269, 271 (1931). There is no question that the direct and natural consequences rule is an integral part of Tennessee's workers' compensation jurisprudence.

However firmly implanted the principle may be that a subsequent injury is deemed to arise out of the employment if it flows from a compensable injury, the rule has a limit. That limit hinges on whether the subsequent injury is the result of independent intervening causes, such as the employee's own conduct. The rule's limitation has been expressed in general terms as "[w]hen the primary inju-

ry is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, *unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.*" 1 *Larson's Workers' Compensation Law* § 10 (2004) (emphasis added). "More specifically, the progressive worsening or complication of a work-connected injury remains compensable *so long as the worsening is not shown to have been produced by an intervening nonindustrial cause.*" *Id.* (emphasis added).

Tennessee courts have applied the intervening cause principle as a way of assessing the scope of an employer's liability for injuries occurring after a compensable injury. *See, e.g., Simpson v. H.D. Lee Co.,* 793 S.W.2d 929, 931–32 (Tenn.1990) (medication taken contrary to instructions constituted an intervening cause); *Guill v. Aetna Life & Cas. Co.,* 660 S.W.2d 42, 43–44 (Tenn.1983) (injecting medication contrary to medical instructions was an intervening cause); *Jones v. Huey,* 210 Tenn. 162, 169, 357 S.W.2d 47, 49–50 (1962) (negligent operation of a tractor following a work-related back injury not compensable). Our cases have expressed the intervening cause principle in various ways. In one case, for example, we stated that "it will be found that if the injured employee, knowing of his weakness, rashly undertakes to do things likely to result in harm to himself, the chain of causation is broken by his own negligence." *Jones,* 357 S.W.2d at 49. In another case, we stated that "every natural consequence that flows from the [work-related injury or disease] arises out of the employment, unless it is the result of an independent intervening cause attributable to the employee's intentional conduct." *Rogers,* 813 S.W.2d at 399. In yet another case, we observed that when the primary injury arises out of the employment, "every natural conse-

quence that flows" from that injury arises out of the employment as well, provided those consequences result "directly and without intervening cause" from the primary injury. *Guill,* 660 S.W.2d at 42. Though stated in different ways, our cases make clear that an employee's intervening conduct can break the chain of causation necessary to impose liability for a subsequent injury based on the direct and natural consequences concept.

### Analysis

Guided by the foregoing principles, we now turn to the issue before us, whether the employee is entitled to medical benefits for the injuries to his hand resulting from the burn and the fall. As noted, the trial court found that these injuries were the result of intervening causes, both the result of the employee's own negligence. Thus, the employee's request for medical benefits was denied. The Appeals Panel reversed, finding that the employee's injuries to his hand were the direct and natural consequence of the prior work-related injury to his elbow. Accordingly, the Panel found that the employer was liable for the medical expenses incurred to treat the hand injuries.

In support of their respective positions, both parties rely heavily upon *Jones v. Huey,* 210 Tenn. 162, 357 S.W.2d 47 (1962). In *Jones,* the worker suffered a work-related injury to his back which he claimed rendered him totally disabled. While coping with the injury to his back, the worker was driving a tractor to collect firewood for his family when he "stepped on the wrong mechanism," causing the tractor to flip "over backwards smashing the life out of" him. *Id.* at 164, 357 S.W.2d at 48. The worker's family sought to collect workers' compensation death benefits on the theory that the work-related back injury prevented the employee from properly

operating the tractor, thus supplying the requisite causal connection between the back injury and the employee's death. This Court declined to impose liability on the employer, concluding that the employee's death while "driving the tractor was in no way connected with his employment and is not compensable." *Id.* at 169, 357 S.W.2d at 50. In analyzing the case, we relied upon the rule that "if the injured employee, knowing of his weakness, rashly undertakes to do things likely to result in harm to himself, the chain of causation is broken by his own negligence." *Id.* at 167, 357 S.W.2d at 49.

In the present case, the Appeals Panel concluded that the standard adopted in *Jones* of "rashly undertak[ing] to do things likely to result in harm" contemplates only reckless or intentional conduct on the part of the employee. *Id.* Thus, according to the Panel, an intervening cause sufficient to sever the chain of causation requires more than simple negligence. The employee makes essentially the same argument, contending that acting in a "rash" manner within the meaning of *Jones* nec-

essarily excludes negligent conduct by the employee. We do not agree.

■■■ A survey of Tennessee cases reveals that our courts have equated "rash" conduct with conduct that has been variously described as "unadvised,"[7] "imprudent,"[8] "unwise,"[9] "improvident,"[10] "ill-advised,"[11] "foolhardy,"[12] "reckless,"[13] "unnecessarily dangerous,"[14] "impulsive"[15] and "stupid."[16] Rash is defined elsewhere as "disregard for consequences: imprudently involving or incurring risk." *Webster's Third New Int'l Dictionary* 1883 (1971). Consequently, although conduct which may be characterized as rash would encompass reckless conduct[17] and intentional conduct,[18] it also includes negligent conduct. Negligence, reduced to its essence, is simply the failure to exercise reasonable care under the circumstances. *See McCall v. Wilder,* 913 S.W.2d 150, 153–54 (Tenn.1995). The foregoing descriptions of rash are synonymous with this definition.

■■■ Accordingly, we reject the employee's argument that only reckless or intentional misconduct can constitute an

---

7. *Thompson v. Clendening,* 38 Tenn. (1 Head) 287, 299 (1858).

8. *Heatherly v. Bridges,* 48 Tenn. (1 Heisk.) 220, 224 (1870).

9. *Bradshaw v. Cruise,* 51 Tenn. (4 Heisk.) 260, 263 (1871).

10. *Copeland v. Long,* 41 S.W. 866, 872 (Tenn. Ch.App.1896).

11. *Colyar v. Wheeler,* 110 Tenn. 58, 65, 75 S.W. 1089, 1090 (1903).

12. *Lennon Co. v. Ridge,* 219 Tenn. 623, 628, 412 S.W.2d 638, 641 (Tenn.1967).

13. *Caldwell v. Ford Motor Co.,* 619 S.W.2d 534, 539 (Tenn.Ct.App.1981).

14. *Bryan v. Paramount Packaging Corp.,* 677 S.W.2d 453, 455 (Tenn.1984).

15. *Green v. State,* 1 Tenn.Crim.App. 719, 450 S.W.2d 27, 34 (1969) (Galbreath, J., dissenting).

16. *Id.*

17. A person acts recklessly when "the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care" expected of an ordinary person under the circumstances. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn.1992).

18. A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Hodges,* 833 S.W.2d at 901.

intervening cause. Instead, we find, as we did in *Jones*, that negligence is the appropriate standard for determining whether an independent intervening cause relieves an employer of liability for a subsequent injury purportedly flowing from a prior work-related injury. If the rule were otherwise, "workers' compensation coverage would become as broad as general health and accident insurance, which it is not." *Houser v. Bi-Lo, Inc.*, 36 S.W.3d 68, 72 (Tenn.2001).

■ The negligence standard adopted in *Jones* and reiterated here today is consistent with the view espoused by Professor Larson in his treatise on workers' compensation law. Professor Larson submits that "an appropriate pair of principles" would be that "[w]hen the injury following the initial compensable injury arises out of a quasi-course [of employment] activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that activity, but only by intentional conduct" by the employee. 1 *Larson's Workers' Compensation Law* § 10.05 (2004). However, when "the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct." *Id.* This case clearly falls in the latter category and, therefore, is subject to a negligence analysis.[19]

Applying these principles to this case, we conclude that the employee failed to exercise due care and thus was negligent in placing his hand on the hot burner of the stove in his kitchen. His negligence operates to relieve the employer of liability for medical expenses incurred in treating the injuries resulting from that negligent act.

Our finding of negligence would be the same even if the employee had suffered no prior injury. Here, there is no dispute that the employee was aware of his susceptibility to injury, for he testified that when he awoke from the surgery, he immediately noticed that had no feeling in two of his fingers. He then discussed this problem with Dr. Freels. Yet, despite knowing that he had lost the protective sensation in his fingers, he failed to watch where he was placing his hand when he bent over to retrieve the skillet and hamburgers on the floor, a task that had nothing to do with his employment. In doing so, he clearly failed to exercise due care.[20]

We do not ignore the employee's contention that the decision of the Appeals Panel should be upheld based upon this Court's decision in *Carpenter v. Lear–Siegler Seating Corp.*, No. 03501–9201–CV–5, 1993 WL 52134 (Tenn. Mar.1, 1993). In *Carpenter,* the worker suffered a work-related back injury. Eight months later, she fell while walking down a flight of stairs in her home when her leg suddenly went numb. The medical proof in the case linked the work-related back injury to the numbness in the employee's leg. Relying upon the direct and natural consequences rule from *Jones,* this Court found that the injuries suffered in the employee's fall at home were compensable. *Carpenter* is distinguishable from the present case, however, because there is nothing in *Carpenter* to suggest

---

**19.** We express no opinion today on the standard to be used when the subsequent injury arises out of a quasi-course of employment activity. That issue will be addressed in an appropriate case.

**20.** Dr. Freels' testimony, when analyzed, only relates the loss of sensation to the earlier on-the-job injury. The thrust of his testimony concerns the extent of the burn injury caused by the numbness, not the legal relationship between the numbness and the injury.

that the worker was negligent in negotiating the stairs or that her fall was otherwise the result of a lack of due care. Indeed, unlike in the present case, no argument was made in *Carpenter* that the employee did anything amounting to an independent intervening cause that should sever the chain of legal responsibility. Accordingly, there is no conflict between *Carpenter* and the result we have reached in this case.

In our view, when the employee disregarded his disabled condition and placed his fingers on the hot stove, the responsibility for the accident and its consequences could no longer fairly be ascribed to his original compensable injury. Imposing liability upon the employer under these circumstances would simply stretch the purpose of workers' compensation law too far and go beyond risks that the employer should be required to bear. *See Mackie v. Young Sales Corp.*, 51 S.W.3d 554, 556 (Tenn.2001) (stating that the workers' compensation system is designed to provide injured workers with periodic payments as a substitute for lost wages).

In light of our conclusion that the employee's burn injury did not arise out of his employment, it follows that the compensability of the additional injuries suffered in the fall over the log, namely the reinjury of the surgically repaired burned finger, is a moot point. We therefore decline to address that issue.

### Conclusion

For the foregoing reasons, we find that the December 2004 injuries to the employee's hand were the result of an intervening cause-his own negligence. Therefore, the employer is not required to pay medical benefits for those injuries, or for the subsequent injuries incurred in the fall over the log. Accordingly, we reverse the Appeals Panel's decision and, in doing so, affirm the trial court's decision. The costs of this appeal are taxed to the employee, Billy Anderson, and his surety, for which execution may issue, if necessary.