**FILED**
**May 21, 2018**
**04:20 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| PAUL WHITE, **Employee,** | ) Docket No.: 2017-03-1291 |
| v. | ) |
| G&R TRUCKING, INC., **Employer,** | ) State File No.: 63359-2016 |
| and | ) |
| RIVERPORT INS. CO., **Carrier.** | ) Judge Lisa A. Lowe |
| | ) |

## EXPEDITED HEARING ORDER
## FOR MEDICAL BENEFITS
### *(DECISION ON THE RECORD)*

This matter came before the undersigned workers' compensation judge on May 18, 2018, on Paul White's Request for Expedited Hearing. The present focus of this case is whether Mr. White is entitled to medical benefits, specifically a lumbar spine fusion surgery at the L5-S1 level. The central legal issue is whether Mr. White's need for surgery relates to his December 22, 2005 injury, for which he has open future medical treatment, or if it is a direct and natural consequence of his injury on August 17, 2016. Riverport insured G&R at the time of the 2016 injury. Gallagher Bassett insured G&R at the time of the 2005 injury and, although not a party, filed an amicus brief. For the reasons below, the Court holds Mr. White is likely to prevail in establishing his need for the L5-S1 fusion is a direct and natural consequence of his 2016 work injury.

### History of Claim

G&R Trucking employed Mr. White for over twenty-eight years. In 2005, he sustained a work-related back injury at the L4 level and underwent surgical decompression and fusion by Dr. Maguire. Mr. White settled a claim for that injury with Gallagher Bassett, which included the provision of lifetime medical benefits related to the injury.

1

In August 2016, Mr. White again injured his back when Riverport had coverage of G&R. Riverport accepted the claim and provided authorized treatment with Dr. Maguire. An MRI performed two months after the injury revealed L3 issues at the L3 level, mild narrowing at L4-L5, and mild to moderate narrowing at L5-S1. Dr. Maguire ultimately performed surgery at L3.

While undergoing physical therapy after that surgery, Mr. White felt a sudden pop in his back with immediate pain. Dr. Maguire ordered a CT myelogram, which again revealed mild narrowing at L4-L5 but also moderately severe right-sided foraminal stenosis at L5-S1 for which Dr. Maguire recommended surgical decompression.

In his June 19, 2017 note, Dr. Maguire stated, "I do consider [the L5-S1 stenosis] part of his work-related injury. I do not know whether it arose in physical therapy or . . . predated that, but . . . I still attribute this to part of his work-related problem." On July 31, Dr. Maguire stated, "He has transitional syndrome and I believe his previous fusion has predisposed him to this." On September 26, Dr. Maguire noted he did not think Mr. White's L3 surgery was in any way related to the L5-S1 problem. Instead, he thought Mr. White was at risk for developing adjacent segment disease related to his prior L4-5 fusion and the L5-S1 level was now symptomatic due to increased stenosis.

On October 26, Dr. Maguire responded to a letter from the adjuster and marked "no" to these questions: (1) Please advise if, in your opinion, the need for surgery at L5-S1 is primarily caused by the August 17, 2016 work injury at level L3-4; and (2) If the surgery is not related to the L3-4 injury, do you rescind the request for surgery at L5-S1 under the claim with the August 17, 2016 date of loss. However, on November 16, Dr. Maguire amended his prior opinion to say that he thought a substantial portion of Mr. White's need for pain management and surgery at L5-S1 was likely due to the more recent injury event at physical therapy. Dr. Maguire placed Mr. White at maximum medical improvement on December 14 and assigned six-percent whole-person impairment.

Riverport sent Dr. Maguire's request for L5-S1 surgery to Utilization Review (UR), and the surgery request was denied. Mr. White appealed the UR decision to the Bureau Medical Director, who issued an Order for the L5-S1 surgery. As a result, Riverport filed a Petition for Benefit Determination seeking relief from the Medical Director's order, and this action followed.

*Mr. White's Contentions*

Mr. White obtained a record review with board-certified orthopedic surgeon, Dr. William Kennedy, who reviewed records from the recent injury but not from the 2005 injury. Thus, he relied on Dr. Maguire's discussion of the prior treatment and the doctor's conclusions in the records regarding the 2016 injury. Dr. Kennedy stated the

recent injury resulted in Mr. White attending physical therapy when he felt a pop, which permanently aggravated and worsened his degenerative changes at L5 for which Dr. Maguire recommended surgery. Dr. Kennedy concluded within a reasonable degree of medical certainty that the L5 degenerative changes were dormant, causing no pain or symptoms, until aroused and worsened by the physical therapy incident, and therefore they related to the 2016 injury. Further, Mr. White stated in his affidavit that the physical therapy injury caused the extraordinary amount of pain that he now suffers. Thus, he took the position that the physical therapy incident and resulting need for the L5 surgery is a direct and natural consequence of his L3 injury. Mr. White asserted the questions asked of Dr. Maguire call for a legal opinion rather than a medical opinion.

### Riverport's Contentions

Riverport argued Mr. White's prior injury caused his need for L5 surgery, making Gallagher Bassett the responsible carrier. It argued Dr. McGuire related the need for surgery to Mr. White's prior injury and Dr. Maguire's causation opinion is presumed correct because he is the "treating physician." It further argued Dr. Kennedy's opinion is less reliable because he never interviewed or evaluated Mr. White, while Dr. Maguire treated Mr. White for over ten years.

### Gallagher Bassett's Contentions

Gallaher Bassett filed an amicus brief stating Mr. White's need for the L5 surgery relates to his new injury. It pointed to two objective imaging studies, the October 21, 2016 MRI and the June 8, 2017 CT myelogram performed after Mr. White felt the pop in his back during physical therapy. Gallagher Bassett argued the MRI noted no disc bulging and only mild to moderate narrowing at L5-S1, while the myelogram showed some disc bulging and moderately severe narrowing at L5-SI. It argued the myelogram clearly revealed a worsening of Mr. White's condition after the physical therapy incident. Gallagher Basset noted that even if Mr. White's 2005 injury predisposed him to a transitional syndrome at L5, the physical therapy caused the current L5 pathology and need for surgery.

### Findings of Fact and Conclusions of Law

Mr. White need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Riverport argued that Dr. McGuire's causation opinion is presumed correct under Tennessee Code Annotated section 50-6-102(14)(E) since he is the "treating physician."

However, that section affords the presumption to the treating physician *selected by employee from a panel*. The Court is unable to determine whether Mr. White chose Dr. Maguire from a panel because Riverport failed to provide documentation or information that Mr. White did so. In fact, Riverport filed the PBD and left blank Section D, "Medical Benefits," which provides a selection that "employee received a list of physicians on [insert date] and selected [insert doctor name]." Due to Riverport's failure to establish Mr. White selected Dr. Maguire from a panel, Dr. Maguire is not entitled to the statutory presumption.

The Court faces conflicting causation opinions from Dr. Maguire and Dr. Kennedy. A trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Reagan v. Tennplasco*, No. M2005-02020-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). As stated by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . . it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted).

Not only do Dr. Maguire and Dr. Kennedy's opinions conflict, but also Dr. Maguire seems to contradict himself. Namely, Dr. Maguire first said "no" when asked if the L5 surgery was related to the 2016 injury but later changed that opinion and said it was related because of the physical therapy event directly attributable to the 2016 injury. Additionally, the Court is unconvinced Riverport asked Dr. Maguire the appropriate questions regarding causation.

Admittedly, Dr. Kennedy only reviewed records and did not perform a physical examination. However, Dr. Kennedy specifically addressed the effect of the physical therapy incident on Mr. White's need for L5-S1 surgery. He said the therapy was a necessary part of Mr. White's rehabilitation program following L3 surgery and the physical therapy incident permanently aggravated and worsened Mr. White's degenerative changes at L5 for which Dr. Maguire recommended surgery. He went on to say that more likely than not, Mr. White would not have been exercising on the physical therapy ball but for his L3 surgery. Therefore, he concluded the L5 condition was causally related to and attributable to the recent work injury and that Mr. White's L5 degenerative conditions were dormant, causing no pain or symptoms until aroused and made worse by the physical therapy incident.

Mr. White's affidavit testimony established he felt a sudden pop in his back and experienced immediate, extraordinary pain that he had not previously suffered. An employee's assessment as to his own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Security, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *6 (Sept. 12, 2017). Standing alone, his own assessment is insufficient,

4

but the Court finds that Dr. Kennedy's expert medical opinion supports Mr. White's testimony, and that even the references in Dr. Maguire's notes support Mr. White's testimony. Additionally, the comparison of the MRI performed after Mr. White's current work injury to the CT myelogram performed after the physical therapy incident objectively show an advancement from mild to moderate narrowing to moderately severe narrowing.

The Appeals Board discussed subsequent injuries in *Lee v. W. Plastics*, 2016 TN Wrk. Comp. App. Bd. LEXIS 53, at *6-7 (Oct. 20, 2016):

> In Tennessee, the general rule is that a "subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696 (Tenn. 2008). "The rule, commonly referred to as the direct and natural consequences rule, has been stated as: [w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* Therefore, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991). "The rationale for the rule is that the original compensable injury is deemed the cause of the damage flowing from the subsequent injury-producing event." *Anderson*, 259 S.W.3d at 697.

The Court holds the evidence established that Mr. White would likely prevail at a hearing on the merits that his L5-S1 surgery was the direct and natural consequence of his August 17, 2016 injury because he suffered a specific incident in physical therapy, which caused his need for the medical treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Riverport shall provide reasonable and necessary medical treatment for Mr. White's L5-S1 condition under Tennessee Code Annotated section 50-6-204(a)(1)(A), including the surgery recommended by Dr. Maguire.

2. **This matter is set for a telephonic Status Hearing on July 13, 2018, at 9:30 a.m. Eastern Time. You must call toll-free at 855-383-0003 or 865-594-0109 to participate in the hearing.** Failure to call may result in a determination of the issues without your further participation.

**ENTERED on May 21, 2018.**

**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

5

## APPENDIX

1. Petition for Benefit Determination,
2. Dispute Certification Notice,
3. Request for Expedited Hearing,
4. Employer's Expedited Hearing Position Statement,
5. Employee's Response to Employer's Expedited Hearing Position Statement,
6. Affidavit of Paul White,
7. Affidavit of William E. Kennedy, MD,
8. Final Judgment Approving lump Sum Settlement, Knox County Chancery Court, filed April 13, 2007,
9. First Report of Work Injury,
10. Wage Statement,
11. Medical Evaluation of Dr. William Kennedy,
12. Functional Capacity Evaluation of Results Physiotherapy,
13. Medical Records and Table of Contents
    a. Ortho Tennessee
    b. Knoxville Orthopaedic Surgery Center
    c. Outpatient Diagnostic Center
    d. Physicians Regional Medical Center
14. October 21, 2016 Lumbar MRI
15. Gallagher Bassett's Amicus Brief.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on May 21, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Joshua J. Bond, Employee's Attorney | | | X | jbond@hdclaw.com |
| Ryan L. Sarr, Employer's Attorney | | | X | rsarr@morganakins.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

6