**FILED**
**Dec 20, 2024**
**01:35 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Chris Yoder,** | ) | **Docket No. 2024-60-0156** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Crum and Forster Holdings Corp.,** | ) | **State File No. 65592-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| **Continental Insurance Co.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

The Court held an expedited hearing on Chris Yoder's request for additional medical benefits from Crum and Forster on December 12, 2024. Mr. Yoder contended that he injured his right ankle while participating in physical therapy for a work-related right-knee injury. He requested an evaluation and any necessary treatment of his ankle.[1] For the reasons below, the Court grants Mr. Yoder's request.

### Claim History

On August 21, 2022, while traveling for work, Mr. Yoder tore the meniscus in his right knee. He later developed a staph infection in the right knee, which he alleged spread to the other knee, necessitating surgery in both. Crum and Forster accepted the right-knee claim but not the left. It paid for right-knee surgery and later a total knee replacement, which authorized physician Dr. Brandon Downs performed in December 2023. Dr. Downs also treated the left knee and eventually replaced it as well. Mr. Yoder paid for this treatment with his personal health insurance.

---

[1] An August 1, 2024, dispute certification notice has no issues checked, stating: "Transferred to Court. No current disputes." However, the parties agreed at a pretrial hearing on December 10 that the only issue at the expedited hearing is Mr. Yoder's entitlement to an evaluation for his right ankle. They resumed mediation the next day, which resulted in an amended dispute certification notice listing compensability and medical benefits as issues. The parties waived the five-business-day period for amendments to the notice in section 50-6-236(d)(3)(B), which they confirmed on the record at the hearing.

1

Mr. Yoder's symptoms spread beyond his knees. After the knee replacements, he developed a right "foot drop," making him unable to lift that foot. He admitted he had "minor discomfort" in his right ankle before the physical therapy incident, which he thought stemmed from being off his feet for several months. Mr. Yoder said he did not mention ankle discomfort to Dr. Downs before the physical therapy event because it "wasn't severe" in comparison to his other conditions.

Mr. Yoder testified that on May 3, 2024, he injured his right ankle while doing "step-ups" at physical therapy. He explained that the exercise required him to step up to a platform approximately eight to ten inches off the floor and then step down. He said, "I felt a little bit sore, and—and, like a little 'pop.'" Mr. Yoder admitted he did not mention the incident to the physical therapist, Matt Harris, at the time, saying that he did not realize he was hurt until later.

After therapy, Mr. Yoder noticed his ankle was "very swollen" and painful, so he took anti-inflammatories. His wife, Didi Yoder, testified that he said he hurt his ankle that day. She noticed the ankle swelling and that he was walking differently.

Mr. Yoder testified that after that night, the pain continued and felt different than before May 3. He additionally said that the pain affected his gait: he began favoring his left leg.

Mr. Yoder went to physical therapy three days later and told the therapist his ankle hurt. He testified that he felt "sharp pain on the outside of the ankle when I put weight on it." Notes from that visit state: "PT reports his R ankle has been bothering him since Friday to the point where he is going to call the ortho[.]"

After the incident, Mr. Yoder sought treatment for the ankle from Dr. Downs, which was not approved on several instances. Dr. Downs's May 21 notes read: "He reports he irritated his ankle when he was doing physical therapy recently." Dr. Downs diagnosed a right-ankle strain and ordered an x-ray and physical therapy. The physical therapy was never authorized. In September, Dr. Downs ordered an MRI of the right ankle, which the carrier denied. Mr. Yoder further offered a May 14 note to Dr. Downs from the carrier, CNA, which states, "CNA approves an evaluation of the right ankle." Mr. Yoder said that also never occurred.

Mr. Yoder testified that he has not requested treatment for the ankle under his personal insurance, relying on his wife's advice. Ms. Yoder is a workers' compensation insurance adjuster for claims in another state and with another company. She told him that workers' compensation should treat the injury.

As to how the ankle feels now, Mr. Yoder said, "It's limiting me. I—I really want to get back in shape," and, "I can't do a lot of the things I used to do." He completed

authorized physical therapy and continues to do the exercises he learned in physical therapy on his own, but he believes something mechanically has changed in the ankle. He cannot do step-ups or any impact-producing exercise and still feels constant pain and daily swelling in the ankle.

Mr. Harris, the supervising and treating physical therapist, testified that on May 3, Mr. Yoder did not complain of ankle discomfort during or after the session. Mr. Harris did not witness any event that might have resulted in injury. He said Mr. Yoder mentioned ankle pain at his next visit, so afterward they altered the therapy. Mr. Harris agreed that Mr. Yoder did not complain of ankle pain before May 3.

### Findings of Fact and Conclusions of Law

To receive benefits at this expedited hearing, Mr. Yoder must show he would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024).

Crum and Forster questioned whether the right-ankle injury occurred and argued that Dr. Downs has not related the injury to work. The Court will address both arguments in turn.

The Workers' Compensation Law requires an employee to show he suffered "a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment . . . identifiable by time and place of occurrence[.]" *Id.* at -102(12)(A).

Here, Mr. Yoder credibly testified that on May 3, 2024, while participating in physical therapy to rehabilitate his knees, he felt soreness and a "pop" in his ankle while performing step-ups. Ms. Yoder likewise credibly testified that her husband told her about the incident, and she observed swelling in his right ankle that same day. Notes from physical therapy on May 7 document that Mr. Yoder told the therapist about the incident at the very next session. He also told Dr. Downs on May 21, as recorded in the doctor's notes.

The supervising physical therapist, Mr. Harris, also offered credible testimony that Mr. Yoder did *not* mention injuring his ankle on May 3. His notes from that session do not discuss an incident with the ankle. But that does not necessarily mean that the incident did not occur as Mr. Yoder described. The Court finds that Mr. Yoder reasonably did not mention the injury to Mr. Harris on that day, given his explanation that he did not immediately realize the nature or severity of the injury. Therefore, the Court finds Mr. Yoder suffered an ankle injury at physical therapy on May 3.

The next question is whether this incident arose primarily out of Mr. Yoder's employment, and specifically whether performing step-ups in physical therapy was the direct and natural consequence of his August 2022 work injury.

3

In *Braden v. Mohawk*, 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at \*8 (Mar. 1, 2022), the Appeals Board cited longstanding case law that "every natural consequence that flows from the [work-related condition] arises out of the employment, unless it is the result of an independent intervening cause attributable to the employee's intentional conduct." Further, "[t]he simplest application of this principle is the rule that all the medical consequences and sequelae that flow from the primary injury are compensable." *Id.* In addition, the Tennessee Supreme Court held that a new injury resulting from medical treatment is compensable under the theory that "the initial injury is the cause of all that follows." *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 697 (Tenn. 2008).

Applying this authority, Mr. Yoder suffered a compensable injury to his right knee that ultimately necessitated replacement surgery and rehabilitation from that procedure. Mr. Yoder later injured his ankle during physical therapy—a medical consequence that "flowed from the primary injury."

Crum and Forster contends Mr. Yoder is not entitled to an evaluation of his ankle because Dr. Downs has not given an opinion relating the injury to work. Case law does not support this position.

In *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \* 9-10 (Mar. 27, 2015), the Appeals Board rejected the assertion that an employee needs an expert opinion that an injury arose primarily out of employment for entitlement to medical benefits at the interlocutory stage. Further, in *Lewis v. Molly Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at \*8-9 (Apr. 20, 2016), the Board held that an employee was entitled to a panel at the interlocutory stage when she offered unrebutted evidence that she suffered back pain after operating a vacuum at work. The Board concluded that although she did not prove a compensable injury, she met her burden to show entitlement to medical benefits. *Id.*

Here, although Mr. Yoder has not yet proven a compensable ankle injury, he has shown he would likely prevail at trial that he is entitled to evaluation and treatment of the ankle. Crum and Forster must immediately provide this.

Finally, Mr. Yoder's counsel requested attorney's fees under section 226(d)(1)(B). The Court denies the request at this time. These facts do not meet the extremely limited circumstances for an award of fees at the interlocutory stage of a case. *See Andrews v. Yates Servs.*, *LLC,* 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at \*7-8 (May 23, 2017).

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. Crum and Forster shall authorize evaluation and treatment of Mr. Yoder's right ankle by Dr. Downs.

4

2. Mr. Yoder's request for attorney's fees is denied at this time.

3. A status hearing is set for **April 14, 2025, at 10:15 a.m. Central Time.** The parties must call (615) 532-9552 or (866) 943-0025 to participate.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). Crum and Forster or the carrier must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED December 20, 2024.**


_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:
1. Declaration of Chris Robert Yoder
2. Agreed Medical Records Exhibit List
3. CNA letter to Dr. Downs

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on December 20, 2024.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| R. Steven Waldron, Employee's Attorney | | X | arlenesmith@wfptnlaw.com |
| Brent Moore, Rick Modryzynski, Employer's Attorneys | | X | bmoore@ortalekelley.com<br>rmodryzynski@ortalekelley.com<br>ccaruso@ortalekelley.com |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

6



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*