FILED

November 7, 2014

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:16 PM

FILED Wrong

November 6, 2014 date
Stamped

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:16 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Desiree Macumber**

**EMPLOYER: USXpress**

**CARRIER: Liberty Mutual Ins. Co.**

**DOCKET #: 2014-01-0006**
**STATE FILE #: 54235-2014**
**DATE OF INJURY: July 15, 2014**
**SSN:**

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Desiree Macumber (Employee). On October 6, 2014, the parties filed separate Requests for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239(d) to determine if the provision of medical and temporary partial disability benefits is appropriate.

An in-person Expedited Hearing was conducted by the undersigned Workers' Compensation Judge on October 30, 2014. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds that Employee is entitled to the medical and temporary disability partial disability benefits requested.

### ANALYSIS

#### Issues

1. Whether Employee suffered an injury by accident which arose primarily out of and in the course and scope of her employment with Employer.

2. Whether Employee is entitled to an award of medical and temporary disability benefits.

#### Evidence Submitted

The following witnesses testified in person at the Expedited Hearing:

1

- Employee;
- Adam Sussdorf, Employee's supervisor of drivers;
- Carrol Green, Employee's transportation specialist; and
- James Ricky Jett, Employee's Whirlpool account manager.

The following exhibits were admitted into evidence at the Expedited Hearing:

- Affidavit of Employee (Exhibit 1);
- Stipulated medical records of Nova Medical Center/Dr. Joanne Williams (Exhibit 2) (21 pages); and
- Wage Statement (Exhibit 3).

The Court designated the following as the technical record in this claim:

- Petition for Benefit Determination filed August 29, 2014;
- Dispute Certification Notice filed October 6, 2014;
- Employer's Request for Expedited Hearing filed October 6, 2014; and
- Employee's Request for Expedited Hearing filed October 6, 2014.

The Court did not consider attachments to the above filings unless admitted into evidence at the Expedited Hearing.

## History of Claim

Employee is employed as a truck driver assigned to the division of Employer dedicated to transporting freight from a Whirlpool manufacturing facility in Cleveland, Tennessee. Employee alleges that, on July 15, 2014, she injured her spine while hand-cranking the landing gear of a trailer to connect it to her truck in the course and scope of her employment with Employer.

Employer accepted Employee's claim and offered her a panel from which she selected Nova Medical Center in Chattanooga. Employee saw Dr. Joanne Williams at Nova on July 22, 2014. Dr. Williams diagnosed a right lumbar sprain and displacement of a lumbar intervertebral disc. She ordered physical therapy and placed Employee on restricted duty. On July 30, 2014, Dr. Williams ordered a lumbar MRI because Employee was in severe pain and the numbness in her right leg was worsening.

After further investigation, Employer denied Employee's claim upon the statements of Employee's supervisor and a co-worker that, shortly before the alleged work injury occurred, Employee told them she was experiencing low back pain. After filing the denial, Employer withdrew authorization for treatment, including the MRI. Employer did not offer Employee light duty, nor did it pay temporary disability benefits.

## Employee's Contentions

Employee contends she injured her low back on July 15, 2014 while turning a rusty crank in the process of connecting her assigned load. She testified that, before beginning work the

morning she was injured, she does not recall saying that her low back was hurting. She stated that, if she said anything about being in pain, she would have mentioned upper back pain. Employee insisted that, prior to the alleged work injury, she had never experienced low back or right leg pain as severe as that she experienced when she attempted to climb into her truck after turning the rusty crank.

Employee contends she is entitled to medical benefits, including authorization of the MRI and physical therapy ordered by Dr. Williams. She further contends she is entitled to temporary partial disability benefits from the date of the injury until she is released to return to work without restrictions or attains maximum medical improvement.

Employee contends that Employer is not relieved from its obligations under the Tennessee Workers' Compensation Act because she fell at home on August 9, 2014. She argues that, other than causing an increase in pain for several days, the nature and extent of the work-related injury she suffered on July 15, 2014 was not worsened by the fall. Employee claims she fell because her crutches slipped on the wet surface of an exterior step at her home. Because she was required by Dr. Williams to ambulate with crutches due to her work injury, Employee insists that any injuries she received from the fall are work-related.

### Employer's Contentions

Employer contends Employee did not suffer an injury in the course and scope of her employment. Its position is based on the testimony of Employee's supervisor, Adam Sussdorf, and a co-worker, Carol Green, that, while drinking coffee before beginning work on the date of the alleged work injury, Employee told them her low back was hurting. Employer contends Employee was suffering from low back pain when she arrived at work on July 15, 2014 and falsely claims that she was injured in the course and scope of her employment. Employer additionally contends that, if it is found that Employee suffered a compensable injury on July 15, 2014, its liability for such injury was terminated by the intervening non-work-related injury she suffered in a fall at her home on August 9, 2014.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, a workers' compensation judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6). Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

3

*Factual Findings*

Upon consideration of the testimony of witnesses in open court, the exhibits introduced by the parties, the argument of counsel, and the record in this claim, the Court makes the following factual findings in the Expedited Hearing conducted in this claim on October 30, 2014:

- Employee injured her spine turning a rusty crank as she connected her assigned load on July 15, 2014;
- Employee did not sustain an intervening injury when she fell at home on August 9, 2014;
- The injury Employee sustained at work on July 15, 2014 requires medical care;
- The injury Employee sustained at work on July 15, 2014 disables her from her usual occupation; and
- Employee has not earned income from any source since injuring her spine at work on July 15, 2014.

*Application of Law to Facts*

*1. Employee suffered an injury arising primarily out of and in the course and scope of her employment on July 15, 2014;*

Tennessee Code Annotated section 50-6-102(13)(B) provides that an injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. In this claim, Employer asserts Employee arrived at work on the date of injury with back pain, thus the pre-existing cause of her back pain, and not her alleged work injury, accounts for her current back and right leg symptoms.

The testimony at the Expedited Hearing differed sharply as to whether, before she began work on July 15, 2014, Employee told her supervisor and a co-worker her low back was hurting. Employee testified that she does not recall making such a statement and does not believe she did so because her low back was not hurting.

Employer's supervisor, Adam Sussdorf, testified that he arrived at work at 7:30 a.m. on July 15, 2014 and, while having coffee around 7:45 a.m., had a conversation with Employee before she proceeded to the parking area to connect her load. He testified that Employee pointed to her low back and said she was experiencing an ache or burn in that area. Mr. Sussdorf, who is a trained EMT, told Employee that the pain was probably coming from her sciatic nerve. A co-worker, Carrol Green, testified she arrived at work around 8:00 a.m. and saw Employee speaking to Mr. Sussdorf. She testified she noticed Employee standing with her hand on her hip and heard her say it hurt in that area. Ms. Green testified she heard Mr. Sussdorf tell Employee her pain was in the sciatic area. Ms. Green testified she told Employee: "you have two of them [sciatic nerves], you know."

4

The Court finds Mr. Sussdorf and Ms. Green are credible witnesses. They testified positively and consistently about what was said, while Employee admitted to a lack of memory about the conversation. This Workers' Compensation Judge finds Employee told Mr. Sussdorf and Ms. Green her low back was hurting before beginning work on July 15, 2014.

The Court also deems credible Mr. Sussdorf's and Ms. Green's observations of Employee's demeanor and physical condition before she began work on July 15, 2014. Mr. Sussdorf testified on cross-examination that Employee was walking and talking normally when she told him her low back was painful. He further testified he saw Employee leaning back in a chair drinking coffee. Ms. Green testified that she observed Employee walk and talk in a normal fashion at the time she was speaking to Mr. Sussdorf and, later, as Employee spoke to other drivers in the office area. Mr. Sussdorf's and Ms. Green's observations were confirmed by the testimony of James Ricky Jett, Employer's Whirlpool account manager, who observed Employee in the break room before going to work. Mr. Jett testified that, when he saw her, Employee was having fun and rocked back in a chair. The credible testimony of Mr. Sussdorf, Ms. Green, and Mr. Jett corroborate Employee's testimony that she was not functionally impaired when she arrived at work on the morning of July 15, 2014.

Mr. Sussdorf and Mr. Jett observed Employee's physical condition to be starkly different from that described above when, a short time later that morning, they observed her after she reported that she was injured while connecting her load. Mr. Sussdorf testified he received a telephone call from Employee during which she told him she was hurt and needed help. He testified he observed over the phone that Employee was in distress and crying. Mr. Sussdorf testified that, after advising Mr. Jett that Employee "was in trouble", the two men proceeded to the parking area to check on Employee. Mr. Sussdorf testified that, when he arrived at Employee's truck, he observed her standing on a step on the truck used by drivers to access the cab. He observed that Employee was crying and could neither move into the cab of the truck nor climb down from the side of the truck. Mr. Sussdorf testified Mr. Jett physically assisted Employee from the truck while he called an ambulance.

Mr. Jett's testimony is consistent with Mr. Sussdorf's. His testimony was that, when he observed Employee on the truck after she reported her injury, she was in distress, crying, agitated from pain, and concerned about falling from the truck. Mr. Jett testified he assisted Employee from the side of the truck by allowing her to place her weight on his shoulders. He and Mr. Sussdorf stayed with Employee until the ambulance arrived. The credible testimony of Mr. Sussdorf and Mr. Jett corroborate Employee's testimony that, after she left the break room and connected her load to her truck, she was in such severe back and right leg pain she could not dismount her truck without assistance.

Because she denied stating that her low back was hurting before beginning work on July 15, 2104, the Court cannot assign full credibility to Employee's testimony. However, because the credible testimony of Mr. Sussdorf, Ms. Green, and Mr. Jett corroborates the testimony of Employee's description of her physical condition, both when she was drinking coffee before she started working and when she attempted to climb into her truck after connecting her load, the Court finds that Employee was not functionally impaired when she arrived at work on July 15,

5

2014.

The Court further finds that Employee injured her spine and right lower extremity when she strained to turn a rusty hand crank in the course and scope of her employment. There is no evidence in the record that Employee did anything other than connect a trailer to her truck in the short span of time which transpired from the moment she left Employer's offices without apparent impairment until the point when, in a disabled condition, she called Mr. Sussdorf requesting assistance. Dr. Williams, the authorized treating physician, noted that Employee gave a history of: "pushing on the landing gear trying to get it lifted and it was tight. Pt's back started hurting really bad but she finally got it up and then tried to climb into her truck and couldn't move her right leg. She states it felt like electricity shooting down her leg." (Exhibit 2, page 1). This history is consistent with the mechanism of injury to which Employee testified at the Expedited Hearing.

Dr. Williams' reports, to which the parties stipulated, do not indicate that the doctor questioned whether the displaced intervertebral disc and lumbar sprain she diagnosed was caused, as Employee reported, by the act of pushing a tight landing gear. In fact, in the Work Status/Restrictions Forms she signed following each visit at which she treated Employee, Dr. Williams recited the mechanism of injury reported by Employee and, by her signature, affirmed that the spine condition for which she treated Employee was a "medical condition resulting from the workers' compensation injury." (Exhibit 2, pages 18-21). On the basis of the evidence introduced at the Expedited Hearing, the Court finds that the preponderance of the evidence establishes that, if this claim proceeds to a Compensation Hearing, Employee will prevail on the issue that she suffered an injury by accident while turning a rusty crank in the course and scope of her employment with Employer.

The fact Employee mentioned low back pain before she began work on July 15, 2014 does not dictate a different result. The back pain Employee was experiencing before work did not disable her, cause her to limp or cry, or preclude her from leaning back in a chair and enjoying herself while interacting with co-workers. Employee's condition after she reported her injury, which is corroborated by credible eyewitnesses, indicates that whatever condition accounted for the low back pain she described before she began work on July 15, 2014, was so advanced and progressed by her work-related injury that Employee could not bear weight on her right leg. Under Tennessee law, a work-related injury which aggravates a pre-existing condition to the extent the condition is advanced in severity or results in a new, distinct condition is compensable. *Trosper v. Armstrong Wood Products, Inc.*, 273 S. W. 3d 598 (Tenn. 2008). Accordingly, the Court finds Employee suffered an injury by accident which arose primarily in the course and scope of her employment on July 15, 2014.

   2. *Employer's liability under the Tennessee Workers' Compensation Act is not relieved by Employee's fall at home on August 9, 2014.*

Employer's attempt to avoid liability on the basis of Employee's fall at home on August 9, 2014, falls under the independent intervening injury defense as developed under Tennessee law. In *Anderson v. Westfield Group*, 259 S. W. 3d 690 (Tenn. 2008), the Tennessee Supreme Court held that the compensability of a work injury can be severed if the injury is advanced or

6

progressed by a subsequent injury which results from an injured employee's intentional misconduct or negligence.

Employer's liability under the Tennessee Workers' Compensation Act is not relieved by the fact she fell at home on August 9, 2014. A close consideration of Dr. Williams' report of August 13, 2014 indicates that, while Employee suffered increased pain due to the fall at home, the findings from the previous visits had not changed. (Exhibit 2, pages 7-8). Dr. Williams maintained the same diagnosis, did not change the restrictions placed on Employee's activities, and did not make different treatment recommendations. (Exhibit 2, pages 7-8). It is noted that Employee fell while using the crutches prescribed by Dr. Williams, who, in the office visit immediately before August 9, 2014, instructed Employee to use crutches as needed. (Exhibit 2, page 6). The Court observed that, at the Expedited Hearing, Employee ambulated slowly and with difficulty, but without crutches, and that, on October 27, 2014, Dr. Williams removed the restriction that Employee walk only with restrictions. (Exhibit 2, page 21). Accordingly, it does not appear Employee's recuperation was significantly hampered by the fall at home.

Additionally, the evidence introduced at the Expedited Hearing fails to establish that the fall Employee suffered on August 9, 2014 was caused by her own negligence or misconduct. Employee testified without rebuttal that she fell when one of her crutches slid on the wet surface of the deck of her home. It is noted that, on the date of the fall, Employee was under instructions from the authorized treating physician to ambulate with crutches as needed. (Exhibit 2, page 6). On the basis of the above, the Court finds that Employee did not sustain an intervening injury when she fell at home on August 9, 2014 such that Employer can avoid its obligations under the Tennessee Workers' Compensation Act.

### 3. Employee is entitled to medical benefits pursuant to the Tennessee Workers' Compensation Act.

The records of Dr. Williams indicate she ordered physical therapy and an MRI which Employer failed to authorize after it denied this claim. (Exhibit 2). There is no indication in the records that Dr. Williams has changed her opinion in regards to Employee's need for additional physical therapy or an MRI. (Exhibit 2). Accordingly, Employer is ordered to authorize the MRI so that it might be promptly scheduled. Employer is further ordered to authorize continuation of the physical therapy ordered by Dr. Williams, as well as any further treatment prescribed by Dr. Williams.

### 4. Employee is entitled to temporary partial disability benefits pursuant to the Tennessee Workers' Compensation Act.

The Tennessee Supreme Court has held that the purpose of temporary disability benefits is to ensure that an injured employee receives income throughout the healing period from a disabling compensable injury. *Fagg v. Hutch Mfg. Co.,* 755 S.W. 2d 446 (Tenn. 1988). An injured worker's entitlement to temporary disability benefits ends when she is able to return to work or attains maximum medical improvement from her work injury. *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770 (Tenn. 2000). Maximum medical improvement occurs when the injured employee reaches the highest degree of recovery that the treating physician believes can

7

be achieved. *Smith v. Gerdau Ameristeel, Inc.,* No. W2011-01399-WC-R3-WC, 2012 Tenn. Lexis 625 (Tenn. Work. Comp. App. Panel September 5, 2012).

Tennessee law recognizes benefits for temporary partial disability. See Tenn. Code Ann. §50-6-207(2). In *Downs v. CNA Insurance Co.,* 765 S. W. 2d 738 (Tenn. 1989), the Tennessee Supreme Court affirmed an award of temporary partial disability benefits for an employee who was released to return to work under restrictions, but was not offered light duty work by the employer and did not locate alternate employment within his restrictions.

The Work Status/Restrictions Forms signed by Dr. Williams on July 22, 2014, July 30, 2014, and August 8, 2014 place substantial restrictions on Employee's activities because of her work-related injury of July 15, 2014. (Exhibit 2, pages 18-20). Those restrictions include, among others, no standing or walking for more than an hour out of an eight (8)-hour day; no lifting of items weighing more than five (5) pounds; and no driving of vehicles with manual transmissions.

The above restrictions precluded Employee from performing her usual employment. Since Employee was not offered light duty and she did not work for another employer between July 22, 2014 and October 27, 2014, this Workers' Compensation Judge finds she is entitled to temporary partial disability benefits at the stipulated compensation rate of $402.45 per week for the full period that she could not work.

Dr. Williams modified Employee's restrictions beginning October 27, 2014. (Exhibit 2, page 21). She released the lifting restriction and increased the restriction on walking or standing to two (2) to four (4) hours of an eight (8)-hour workday. Dr. Williams, however, maintained the limitation against driving a vehicle with a manual transmission. Employee testified at the hearing she was unable to drive a truck for Employer and had not undertaken alternative employment. No evidence was introduced to indicate Employer has offered light duty work which accommodates the restrictions Dr. Williams imposed on October 27, 2014. On the basis of the above, this Workers' Compensation Judge finds Employee is entitled to on-going temporary partial disability benefits at the stipulated rate of $402.45 per week from October 27, 2014 until she returns to work or attains maximum medical improvement from her work-related injury.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Employee's injuries shall be paid and Employer or its workers' compensation carrier shall provide Employee with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204, to be initiated by Employer's/Carrier's authorization of Dr. Joanne Williams to treat Employee's work-related injury. Said medical care shall include, but not be limited to, Employer's/Carrier's authorization and scheduling of the physical therapy and MRI prescribed by Dr. Williams. Medical bills shall be furnished to Employer or its workers' compensation carrier by Employee or her medical providers.

2. Temporary partial disability benefits shall be paid by Employer or its workers compensation carrier at the stipulated rate of $402.45 per week based on Employee's stipulated average weekly wage of $603.67.

3. Employer or its workers' Compensation carrier shall pay Employee past due temporary disability benefits in the amount of $6,036.75 for the period from July 22, 2014 to November 4, 2014, a total of fifteen (15) weeks.

4. Employer or its workers' compensation insurance carrier shall continue to pay to Employee temporary partial disability benefits in regular intervals until Employee is no longer eligible for those benefits by reaching maximum medical improvement; by returning to work; or by release without restrictions by the authorized treating physician. Employer's representative shall notify the Division, Employee and Employee's counsel, if any, in writing immediately by filing Form C-26 of Employer's intent to terminate temporary disability benefits, citing the basis for the termination.

5. This matter is set for Initial Hearing on November 17, 2014, at 9:30 a.m. Eastern Standard Time.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

Initial Hearing:

An Initial Hearing has been set with Judge Thomas Wyatt, Court of Workers Compensation Claims, on November 17, 2014, at 9:30 a.m. Eastern Standard Time. You must call 615-741-2051 or toll free at 855-747-1721 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date and time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

ISSUED AND FILED WITH THE COURT OF WORKERS' COMPENSATION CLAIMS ON THE 7TH DAY OF NOVEMBER, 2014.

_____
Judge Thomas Wyatt
Tennessee Court of Workers'
Compensation Claims
540 McCallie Avenue, Suite 600
Chattanooga, TN 37402

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of November, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| James Dreaden, Atty. | | | | | X | Dreaden1@aol.com |
| Scott Johnson, Atty. | | | | | X | SJohnson@noogalaw.com |

_____
**Thomas Wyatt**
**Workers' Compensation Judge**