FILED

October 20, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:00 P.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Justin Lee ) | Docket No.   2016-06-0912 |
| ) | |
| v. ) | State File No. 70538-2015 |
| ) | |
| Western Plastics, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Robert V. Durham, Judge ) | |

_____

### Affirmed and Remanded - Filed October 20, 2016
_____

In this interlocutory appeal, the employer challenges the trial court's findings that the employee's recurrent shoulder dislocations and need for surgery were causally related to a compensable work injury. The employee suffered a shoulder dislocation at work, which the employer accepted as compensable and for which it provided medical care, including surgery. Subsequently, the employee suffered multiple dislocations of the same shoulder while away from the workplace. The trial court ruled there was sufficient evidence to establish the employee was likely to prevail at trial in establishing the subsequent dislocations were causally related to the workplace injury and ordered medical benefits, including surgery recommended by the employee's authorized treating physician. The employer has appealed, arguing that (1) the evidence is insufficient to link the recurrent shoulder dislocations to the original work injury, and (2) the recurrent dislocations were due to intervening events, specifically the employee's intentional and/or negligent conduct. We affirm the trial court's decision and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge Timothy W. Conner joined; Judge David F. Hensley dissenting.

J. Scott Hickman, Nashville, Tennessee, for the employer-appellant, Western Plastics

Justin Lee, Madisonville, Kentucky, employee-appellee, pro se

1

**Factual and Procedural Background**

Justin Lee ("Employee") was employed by Western Plastics ("Employer") on August 31, 2015 when he suffered a compensable shoulder injury. Specifically, his right shoulder was dislocated when he struck his shoulder on a piece of machinery. Employer provided authorized medical treatment, including surgery, with Dr. Calvin Dyer, an orthopedic surgeon.

On January 8, 2016, Employee returned to Dr. Dyer for a post-surgical follow-up at which Dr. Dyer noted Employee had progressed to a home exercise program and could return to work with no restrictions. He instructed Employee to return in one month, at which time he anticipated Employee would be at maximum medical improvement.

When Employee followed up with Dr. Dyer on February 5, 2016, Dr. Dyer noted he had been doing well until a large dog jumped on him and hit his shoulder, causing it to dislocate again. Dr. Dyer noted that Employee had experienced a good recovery overall and that it was "unfortunate that he has had a new injury but hopefully this will only slow him down minimally." A report completed that day by Dr. Dyer reflects Employee was at maximum medical improvement, could return to work with no restrictions, should follow up as needed, and that his diagnosis of right shoulder dislocation was work-related. Several weeks later, on March 18, 2016, Employee returned to Dr. Dyer reporting he had experienced a recurrent dislocation when he rolled over in bed. Dr. Dyer ordered physical therapy and resumption of a home exercise program. He did not assign work restrictions and indicated on his report that the "recurrent dislocation" was work-related.

The last medical report in the record is for an office visit with Dr. Dyer on April 28, 2016. At that visit, Employee reported yet another right shoulder dislocation as a result of "just a simple swat of his arm." Dr. Dyer observed Employee had experienced instability in his shoulder for the past four months and recommended a second surgery to address the "continued instability." In his office note, Dr. Dyer stated that Employee's "compliance is an issue, and I have confronted him and counseled him again at length about the operative procedure and the need for compliance and exercises." Dr. Dyer further observed that Employee had experienced "a set of unfortunate circumstances for this work-related injury. The recurrent instability unfortunately occurred during his recovery. He never had a chance to heal." Dr. Dyer also noted that "with his everyday activities and continued instability," he needed surgery and opined that "with a reasonable degree of medical certainty the original dislocation had an episode at work

2

followed by trauma and his recovery from this work injury." Employer denied the surgery recommended by Dr. Dyer.[1]

Employee filed a petition for benefit determination, and the parties agreed that a decision could be rendered based upon the record without an evidentiary hearing. The trial court determined that no additional evidence was necessary to resolve the issues and, after reviewing the information submitted, the trial judge found Employee was likely to succeed at a hearing on the merits and ordered Employer to provide ongoing medical care, including the surgery recommended by the authorized physician, Dr. Dyer. The trial court denied payment of emergency room bills submitted by Employee on the basis that he had not established the bills were reasonable and necessary.[2] Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

**Analysis**

Employer makes two arguments on appeal. First, Employer asserts that the trial court erred in ordering benefits in the absence of a medical opinion linking the recurrent shoulder dislocations to the original work injury. Second, Employer maintains Employee is not entitled to the additional medical treatment ordered by the trial court because of

---

[1] According to Employee's affidavit contained in the record, he dislocated his shoulder again on July 23, 2016, this time when he slipped and tried to catch himself while vacuuming out his car. There are no medical records or other information in the record about this incident.

[2] Employee did not appeal the denial of the emergency room bills and, thus, we do not address that issue.

independent, intervening causes, specifically Employee's own intentional and/or negligent acts.

A.

In Tennessee, the general rule is that a "subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696 (Tenn. 2008).[3] "The rule, commonly referred to as the direct and natural consequences rule, has been stated as: [w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* Therefore, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991). "The rationale for the rule is that the original compensable injury is deemed the cause of the damage flowing from the subsequent injury-producing event." *Anderson*, 259 S.W.3d at 697.

Under circumstances similar to this case, the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel determined that the failure of a biceps tendon repair due to the injured worker restraining a dog was a direct and natural consequence of the work-related injury and was compensable. *Kirby v. Memphis Jewish Nursing Home*, No. W2010-02261-WC-R3-WC, 2011 Tenn. LEXIS 1135, at *10 (Tenn. Workers' Comp. Panel Dec. 1, 2011). The subsequent injury occurred when the employee's arm was jerked by a dog he was holding by the collar some three months after the employee's shoulder surgery. *Id.* at *3. As in the present case, the authorized physician had assigned no restrictions, and the Panel determined the employee had not acted negligently in grabbing the dog's collar. *Id.* at *10. In doing so, the Panel concluded that the injury to the employee's arm was a natural and probable consequence of the original injury rather than an independent, intervening event.

In the present case, the trial court considered Employee's medical records and determined that, taken as a whole, they were sufficient to conclude Dr. Dyer opined the recurrent dislocations and need for surgery were causally related to the workplace injury. We agree. Dr. Dyer's records reflect that Employee's recurrent dislocations occurred during his healing period. Dr. Dyer stated that Employee never had a chance to heal from his surgery and that he had "continued instability," resulting in the recurrent dislocations. Moreover, the record contains two reports, one dated February 5, 2016, which is when Employee saw Dyer following the dog incident, and the other dated March 18, 2016, which is when he saw Dr. Dyer for the sleeping incident. One report lists the diagnosis

---

[3] The effect of the Reform Act of 2013 on the direct and natural consequences rule, if any, has not been raised or addressed by the parties in the trial court or on appeal. Thus, any discussion or consideration of that issue must await an appropriate case.

as "recurrent dislocation" and the other report shows the diagnosis as "dislocation." To the right of the diagnosis on each form, Dr. Dyer checked a box stating "is work related." Additionally, Dr. Dyer's April 2016 record reflects Employee had experienced instability in his right shoulder for four months, indicating the instability pre-dated the January 31, 2016 incident in which the dog jumped on him. The record contains no contrary medical evidence. Absent any such proof, we cannot conclude that the evidence preponderates against the trial court's finding that the recurrent dislocations and need for surgery are causally related to the compensable injury.[4]

B.

Employer's second argument is that the trial court erred in awarding additional medical benefits because Employee's actions constitute independent, intervening events resulting in the need for the additional medical treatment. According to Employer, Employee's recurrent shoulder instability is due to intervening events unrelated to the original work injury, namely, Employee's "own intentional and/or negligent acts." Thus, Employer argues that additional treatment needed due to the subsequent dislocations should be denied. We do not agree.

The law is clear that "[h]owever firmly implanted the principle may be that a subsequent injury is deemed to arise out of the employment if it flows from a compensable injury, the rule has a limit. That limit hinges on whether the subsequent injury is the result of independent intervening causes, such as the employee's own conduct." *Anderson*, 259 S.W.3d at 697. While events unrelated to an employee's conduct may arguably constitute an independent intervening cause, Tennessee courts have consistently applied the principle that, in order for an employee's actions to constitute an independent intervening incident sufficient to break the chain of causation, there must be negligent, reckless, or intentional conduct on the part of the employee. *Id.* ("[N]egligence is the appropriate standard for determining whether an independent intervening cause relieves an employer of liability for a subsequent injury purportedly flowing from a prior work-related injury."); *Rogers*, 813 S.W.2d at 399 ("[E]very natural consequence that flows from the occupational disease arises out of the employment, unless it is the result of an independent intervening cause attributable to the employee's intentional conduct.").

---

[4] Employer correctly points out that when Dr. Dyer saw Employee after the first post-surgery dislocation, he referred to it as a "new injury." Employer argues, therefore, that Dr. Dyer believed Employee's post-surgical dislocations were unrelated to his August 2015 work injury. This argument fails to consider Dr. Dyer's records as a whole. As stated by the trial judge, Employee "continued to suffer from shoulder dislocations, often over seemingly trivial activities such as rolling over in bed or swatting at a dog, [and] Dr. Dyer revised his opinion," noting that Employee continued to suffer from "recurrent instability" as he was recovering from surgery.

5

Moreover, for purposes of the intervening cause principle, an employee acts negligently when the employee fails to exercise reasonable care under the circumstances. *Anderson*, 259 S.W.3d at 698. An employee acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* at n.18. Thus, "[t]hough stated in different ways, our cases make clear that an employee's intervening conduct can break the chain of causation necessary to impose liability for a subsequent injury based on the direct and natural consequences concept." *Id.* at 697.

Guided by these well-established principles, we note the trial court concluded that the instances resulting in Employee's recurrent dislocations did not amount to intentional or negligent conduct on the part of Employee. We find no proof in the record to the contrary. While Employer asserts that it was negligent of Employee to allow a dog to jump on him, there is no evidence to establish the circumstances surrounding that event. It is unclear from the record whether Employee allowed the dog to jump on him, tried to avoid the dog, or was simply taken unawares. Furthermore, we cannot see how rolling over in bed or casually swatting one's arm at a dog amounts to behavior that could be characterized as negligent, at least based on this record, and especially given that Dr. Dyer had not imposed any physical restrictions on Employee when these incidents occurred.

Finally, we agree with the trial court's observation that, while Dr. Dyer's notes reflect some concern with Employee's compliance, there is insufficient evidence in the record to establish the nature of the noncompliance and whether it was in any way causally related to the recurrent dislocations. Accordingly, the trial court's order for medical benefits, including the surgery recommended by the authorized treating physician, Dr. Dyer, is affirmed.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.



**FILED**

**October 20, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:00 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Justin Lee | ) | Docket No.   2016-06-0912 |
| | ) | |
| v. | ) | State File No. 70538-2015 |
| | ) | |
| Western Plastics, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Robert V. Durham, Judge | ) | |

---

### Dissent-Filed October 20, 2016

---

Hensley, J., dissenting.

The issue in this case is whether the preponderance of the evidence supports the trial court's determination that the employee will likely prevail at trial in establishing that the employer is responsible under the applicable principles of the Workers' Compensation Law for providing additional medical care and shoulder surgery recommended by the authorized physician.  The majority opinion concludes the employee presented sufficient evidence at this interlocutory stage of the claim.  I respectfully disagree.

I would reverse the trial court's determination on the basis that the preponderance of the evidence does not support a determination that the employee will likely prevail at trial in establishing that the need for the additional medical care and surgery is the "direct and natural consequence" of the August 31, 2015 work-related injury.  At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but, instead, must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2015). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).  This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence

1

does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In my view, although no issue has been raised as to the compensability of the original workplace injury, the employee failed to meet even this lesser evidentiary standard regarding whether his need for medical care and surgery subsequent to the January 31, 2016 dislocation was the direct and natural consequence of the workplace injury.

Here, the relief granted in the trial court's interlocutory order was additional medical care, including surgery, recommended by the authorized treating physician. In reviewing a trial court's decision determining that the evidence presented at an expedited hearing is sufficient to find that an employee is likely to prevail at trial, the Appeals Board must determine where the preponderance of the evidence lies. *Revnew v. Amazon.com, Inc.*, No. 2016-06-0320, 2016 TN Wrk. Comp. App. Bd. LEXIS _, at *_ (Tenn. Workers' Comp. App. Bd. Oct. 3, 2016). The only records submitted by the parties for the trial court's consideration are those that post-date the employee's right shoulder stabilization surgery. Because of the significance the medical records play in deciding the issue under review, I believe it is necessary to discuss the records in greater detail than does the majority opinion.

The earliest medical report contained in the record is the report of the employee's January 8, 2016 post-operative visit. The report does not suggest that Dr. Dyer or the employee had any concerns about the success of the shoulder stabilization surgery:

> Healthy young man. Wounds are nicely healed. He can forward flex to 180 degrees. He is still tight with only 70 degrees of external rotation. Elbow and hand movements are full. He reports no subluxation events and has been going to therapy working on strengthening exercises.

X-rays "show[ed] good alignment, centralization of the shoulder. No other abnormalities." The "Plan" included home exercises, returning to regular work, and following up with the doctor in one month. Dr. Dyer stated that "[a]t that time, I expect him to be back at maximum medical improvement with one month of work under his belt."

As with each of the four office visits for which medical records were submitted, the January 8, 2016 record included a form WorkLink Physician's Report ("WorkLink Report") that included, among other information, the name of the employer, the insurance company, and the case manager. The form included boxes that could be checked to identify whether the visit was an initial visit, re-check, evaluation only/second opinion, or "evaluation and treat." The form also included three boxes that could be checked to identify whether the visit is work-related, is not work-related, or "cannot be determined." Below these boxes are two lines, one for "Diagnosis," and the second for "Medications."

2

The form also contains space for the physician to provide work status information and/or restrictions.

The January 8, 2016 Worklink Report is marked "re-check" and "is work related." The diagnosis was "[r]ight shoulder [p]ost op." No work restrictions were specified, and the report indicates the employee was returned to regular duty on January 8, 2016. He was to follow up in one month.

As instructed, the employee returned to Dr. Dyer approximately one month later, on February 5, 2016, and reported "[a] large 100-pound dog jumped on him, hit his shoulder and he re-dislocated while in Kentucky this past week." The physical exam at this visit revealed "slight tenderness anteriorly . . . [m]ild pain only behind his back," and Dr. Dyer noted that "[o]verall, he has made a good recovery from his surgical procedure." However, Dr. Dyer also stated that "[i]t is unfortunate that he has had a new injury but hopefully this will only slow him down minimally." Dr. Dyer placed the employee at maximum medical improvement "following right shoulder surgery for a dislocation related to work," noting he would assign an impairment rating and that the employee would not have any permanent restrictions. The WorkLink Report noted the visit was a "re-check" that "is work related" and included a diagnosis of right shoulder "dislocation." The work status box noted the employee was at "MMI" and was returned to regular duty with no permanent restrictions. The employee was to return to Dr. Dyer "as needed." Four days later, Dr. Dyer electronically signed a letter "To Whom It May Concern," wherein he expressed the following:

> Justin Lee has been under my care following a work-related injury dated August 31, 2015. He suffered a work-related right shoulder dislocation. He currently has reached maximum medical improvement as of February 5, 2016. He will be able to perform full duty regular work. He will retain permanent impairment related to this injury and subsequent surgery according to the AMA Guides Sixth Edition page 404, table 15-5. He will retain an 11% right upper extremity impairment or 7% whole person impairment.

When the employee returned to Dr. Dyer six weeks later on March 18, 2016, he reported another dislocation episode while sleeping. The narrative report states he "reports rolling over . . . when his shoulder just simply came out of place in bed . . . [on] 02/29/2016." Dr. Dyer started "a short course of physical therapy," and noted that "[h]is case manager is present today." The employee was to "[r]eturn to regular duty work as a pharmacy technician," which the report noted was a "different employment than his injury." The March 18, 2016 WorkLink Report was marked "re-check" and "is work related" and indicated a diagnosis of "[right] [s]houlder [r]ecurrent [d]islocation." It reflected the employee was to return to regular duty the following day and was to return to the doctor in six weeks, following four physical therapy visits.

3

When the employee returned to Dr. Dyer six weeks later on April 28, 2016, he reported continuing to "work full duty for a job other than the one that caused [the] dislocation." Dr. Dyer noted that the employee "previously had shoulder stabilization in December [2015] and then had trauma in his postoperative recovery period." The report states "[t]his time his date of injury was 04/19 when he just had a simple swat of his arm and the shoulder came out of place." Dr. Dyer noted that the employee "has had recurrent instability for 4 months following shoulder stabilization. Unfortunately, he had mild trauma in his recovery while [he was] still in a sling, which dislocated his shoulder." The narrative report included the following assessment:

> Recurrent shoulder instability. I spent more than 20 minutes discussing options for treatment, but with his everyday activities and continued instability, I have offered revision surgery. At this point, I would expect enough soft tissue to be able to repair this. Physiologically, he is not excessively lax. There is a possibility of open procedure with bony block, but at this time without any bony defects in his anterior glenoid, I would expect to be able to fix him arthroscopically. His compliance is an issue, and I have confronted him and counseled him again at length about the operative procedure and the need for compliance and exercises. He has a set of unfortunate circumstances for this work-related injury periods [sic]. The recurrent instability unfortunately occurred during his recovery. He never had a chance to heal.
>
> Although this is a complicated situation, with a reasonable degree of medical certainty the original dislocation had an episode at work followed by trauma and [sic] his recovery from this work injury. He consents and will proceed.

In my opinion, it is significant that Dr. Dyer did not mark the WorkLink Report for the April 28, 2016 visit to indicate that the employee's diagnosis of "[r]ight [s]houlder [r]ecurrent [d]islocation" was work-related. The doctor also did not indicate whether the visit was a "re-check" or an "initial visit." The WorkLink Report noted that the surgery is "to be scheduled," but nowhere in the narrative report or the WorkLink Report for the April 28, 2016 visit does the doctor indicate that the need for surgery is either a direct and natural consequence of the August 2015 work injury or reasonably required as a result of the August 2015 work injury.

The trial court identified the "dispositive issue" as whether the employee's "post-surgery shoulder dislocations constitute intervening events sufficient to break the causal connection between [the employee's] original injury and his current need for medical treatment." The trial court "[held that] the evidence submitted by [the employee] is sufficient to establish he is likely to prevail at a hearing on the merits regarding the

4

reasonableness and necessity of additional treatment . . . for his work-related injury." However, the reasonableness and necessity for additional medical treatment was not at issue. The trial court stated that "[i]n order to prevail, [the employee] must establish that his recurrent shoulder dislocations and his current need for medical treatment are the 'direct and natural result' of the undisputed work injury he sustained on August [31], 2015." The trial court noted that Dr. Dyer's causation statement "is admittedly less than clear." Nevertheless, the trial court found that "when considering the record as a whole, . . . Dr. Dyer's record is sufficient to establish he *has opined* [the employee's] 'recurrent instability' and need for revision surgery causally relate to his initial work injury on August [31], 2015." (Emphasis added).

I disagree with the trial court's finding that Dr. Dyer's "record" is sufficient to establish that he *has opined* that the employee's recurrent instability and need for surgery causally relate to the original injury. Likewise, I disagree with the majority's agreement with the trial court's conclusion that the medical records, taken as a whole, "were sufficient to conclude Dr. Dyer opined the recurrent dislocations and need for surgery were causally related to the workplace injury." Instead, in my opinion both the trial court and the majority reached their own conclusions in the absence of medical evidence either disclosing the doctor's opinion or establishing causation.

Contrary to the trial court's determination, Dr. Dyer did not opine that the employee's recurrent instability and need for surgery either causally relate to or are the direct and natural consequence of the August 2015 injury. He simply did not address the issue. I do not discern any of the statements upon which the trial court and the majority opinion rely to constitute an expert opinion regarding causation. The authorized physician made observations about the employee's post-surgical course of treatment and his setbacks. However, these statements do not indicate that Dr. Dyer has an opinion regarding whether the subsequent dislocations are causally related to the workplace injury. Moreover, statements contained in Dr. Dyer's records can be interpreted to express an opinion contrary to the one the trial court and the majority opinion have adopted. Furthermore, once the doctor recommended the additional surgery, he did not mark the "is work related" box on the WorkLink Report as he had for the previous visits. In my view, the record is devoid of an expert medical opinion regarding causation, and there is insufficient evidence in the record at this stage of the proceedings to establish that the employee is likely to succeed on the merits of his claim at trial. Accordingly, I would reverse the trial court.

5

**FILED**

**October 20, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:00 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Justin Lee | ) | Docket No.   2016-06-0912 |
| | ) | |
| v. | ) | State File No.  70538-2015 |
| | ) | |
| Western Plastics, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 20th day of October, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Justin Lee | | | | | X | Jlee59305@gmail.com |
| J. Scott Hickman | | | | | X | SHickman@srvhlaw.com |
| Robert V. Durham, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov