**FILED**
**Aug 16, 2021**
**04:18 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **STEPHANIE HULL EAGER,** | ) | **Docket No. 2020-08-0880** |
| **Employee,** | ) | **2020-08-0881** |
| | ) | |
| **v.** | ) | **State File No. 50917-2016** |
| **LOWE'S HOME CENTERS, INC,** | ) | **27300-2018** |
| **Self-Insured Employer.** | ) | |
| | ) | **Judge Allen Phillips** |

## EXPEDITED ORDER FOR MEDICAL BENEFITS

This case came before the Court on July 27, 2021 for an Expedited Hearing. Ms. Hull Eager requested medical benefits for two separate injuries.[1] Specifically, she wanted Lowe's to provide a panel of physiatrists for a shoulder injury and she wanted Lowe's to pay for an ankle surgery. For the following reasons, the Court orders Lowe's to provide the requested medical benefits and refers the case to the Compliance Program for consideration of a penalty for failure to timely provide the benefits.

### History of Claim

*Shoulder injury*

Ms. Hull Eager reported a shoulder injury on May 23, 2016, and Lowe's authorized medical treatment from orthopedic surgeon Dr. Ashley Park. From October 2016 through November 14, 2017, Dr. Park consistently diagnosed neck and right shoulder blade pain. He recommended physical therapy, medication, nerve blocks, and a nerve ablation procedure. None of those treatments provided complete relief. Nevertheless, Dr. Park felt Ms. Hull Eager was "medically stable" as of November 14, so he placed her at maximum medical improvement with no impairment.

---

[1] The Court consolidated the two requests for judicial economy. *See* Tenn. R. Civ. P. 42.01 (2020).

1

In January 2018, Ms. Hull Eager returned with the same complaints. Dr. Park provided additional conservative treatment for the next two years to no avail. Then, on January 27, 2020, he stated, "I would like to get a 2nd opinion from Dr. Michael Sorensen of PM&R."[2]

Ms. Hull Eager never saw Dr. Sorensen. Rather, as she explained at the hearing, the parties learned that Dr. Sorensen no longer practiced in the area. She then asked for a panel of physiatrists to replace him, but Lowe's declined to provide one. To date, she has not seen a physiatrist.

Dr. Park saw Ms. Hull Eager once more after making the referral. On July 28, 2020, he summarized his treatment and noted that the physiatry evaluation "never took place." He placed Ms. Hull Eager at maximum medical improvement a second time, assessing a permanent impairment rating, and placing significant restrictions on her physical activity.

*Ankle injury*

Ms. Hull Eager injured her left ankle on March 29, 2018, and Lowe's authorized treatment with Dr. Benjamin Grear, an orthopedic foot and ankle specialist. Dr. Grear diagnosed a tendon strain that he primarily related to her work injury. He treated the condition conservatively including prescribing a walking boot and later placing a brace.

By September 28, Dr. Grear discussed surgery, telling Ms. Hull Eager that, "if you feel that it is bad enough, the next step is we're talking about surgery." He described that surgery in his deposition as a "fairly involved" procedure where he would remove the damaged tendon, replace it with one from her toe, and "break" the heel to create a new arch in her foot.

Dr. Grear said Ms. Hull Eager wanted to avoid the surgery "because it was so involved and it's a big surgery." Instead, she decided to continue wearing the brace. Because Dr. Grear had nothing else to offer but surgery, he placed her at maximum medical improvement as of January 22, 2019. Ms. Hull Eager felt she could tolerate standing "half the day," so Dr. Grear placed a restriction of no more than four hours of standing and use of the brace "indefinitely." Ms. Hull Eager tried to continue working at Lowe's but left in February 2019 when it could no longer accommodate her.

Ms. Hull Eager returned to Dr. Grear in December 2019 reporting the same problems but saying that they had worsened over the past "couple months." Dr. Grear advised that she could continue wearing a walking boot or her brace. She saw him again in February 2020.

---

[2] In medical terminology, "PM&R" means "physical medicine and rehabilitation," also known as physiatry. www.hopkinsmedicine.org (last visited August 9, 2021).

Then, on April 14, 2020, Ms. Hull Eager returned to Dr. Grear and reported that, "2 or 3 days ago she was trying to get more active and she felt a pop" in her foot. In his deposition, Dr. Grear testified that he did not believe the pop "changed anything," stating that both the need and recommendation for surgery were present before the "pop." After the April 14 visit, Ms. Hull Eager decided to proceed with surgery.

Lowe's, through its third-party administrator, submitted the surgery recommendation to its own Utilization Review provider in May 2020. The records included the April 2020 visit to Dr. Grear. The Utilization Review physician certified the procedure as "medically necessary" and noted, "there is no further non-operative treatment which would be reasonable." The provider detailed the basis for his decision by extensively referencing the ODG Guidelines.[3]

At the hearing, Ms. Hull Eager testified she has continued pain in her right shoulder, neck, and upper back. She sees her personal physician for those problems but still desires to see a physiatrist, as Dr. Park recommended. She said that, upon learning Dr. Sorensen was unavailable, she not only asked Lowe's for another physician, but she also tried to return to Dr. Park. However, Dr. Park said he had "nothing more" to offer.

As to her ankle, she is ready to undergo the surgery. She described how the ankle injury ultimately led to her ceasing work in February 2019 and that her ankle condition still prevents her from working. Ms. Hull Eager argued that both Drs. Park and Grear's treatment recommendations are presumed correct under Tennessee Code Annotated section 50-6-204(a)(3)(H) (2020).

Ms. Hull Eager said she felt the pop in her foot when merely moving about her home and noted that Dr. Grear confirmed the pop did not change his opinion that the surgery was required because of the work injury. She asserted that he had recommended the surgery long before April 2020.

Lowe's argued that Ms. Hull Eager stated in her Petition for Benefit Determination that she was referred to "pain management," which had not been approved. However, Lowe's pointed out that Dr. Park did not refer Ms. Hull Eager to pain management but stated "he wanted [her] to receive a second opinion from a PM&R physician." Thus, Lowe's declined to provide a panel of pain management physicians. Lowe's also argued it had no obligation to authorize a second opinion because Dr. Park placed Ms. Hull Eager at maximum medical improvement, even though she had not received the second opinion.

As to the ankle surgery, Lowe's admitted that the injury was compensable and that Dr. Grear was the authorized physician. However, it said that from January 2019 through

---

[3] The medical records submitted at the hearing included those from two independent evaluations, one on behalf of each party. Because the Court did not rely on those opinions here, it will not summarize them.

February 2020, Ms. Hull Eager "handled her condition fairly well with the use of a brace and other conservative treatment." Then the pop in April 2020 prompted her to agree to surgery.

In support, Lowe's cited *Anderson v Westfield Grp.*, 259 S.W.3d 690 (Tenn. 2008) for the proposition that an independent intervening event breaks the chain of causation between an injury and the need for medical treatment. Lowe's argued that the "crucial fact in the *Anderson* matter was the fact that there was evidence in the record that supported a conclusion that the employee's own negligence caused his new injury." Lowe's argued that Ms. Hull Eager "never specifically stated what she was doing when she felt the pop," but it was only after it that she wanted surgery. Because the pop was an intervening cause, Lowe's contended it "in good faith" denied the surgery, even though Dr. Grear and Utilization Review said it was medically necessary.

### Findings of Fact and Conclusions of Law

At this Expedited Hearing, Ms. Hull Eager must show she would likely prevail at a hearing on the merits regarding all of her claims. Tenn. Code Ann. § 50-6-239(d)(1).

### *Panel of physiatrists*

Under Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii), a treating physician may refer the employee to a specialist. If a referral is made, an employer is deemed to have accepted it unless, within three business days, the employer provides a panel of physicians.

Here, Dr. Park made a referral to Dr. Sorensen, and Lowe's did not offer a panel within three days. Instead, Ms. Hull Eager testified without contravention that Dr. Sorensen was unavailable, she asked for a panel of physicians to replace him, and Lowe's refused to provide one. Lowe's offered no reasonable justification as to why it did not offer a panel or approve another physician.

Specifically, the Court finds no merit in Lowe's argument that Dr. Park did not mention the second opinion again or that he placed Ms. Hull Eager at maximum medical improvement before obtaining the opinion. What Dr. Park said six months after his referral is not controlling; what he said when he made the referral is. In short, the relevant issue is whether Ms. Hull Eager presented sufficient evidence that a treating physician made a referral to a specialist. *See Beech v. G4S Secure Solutions (USA), Inc.,* 2020 TN Wrk. Comp. App. Bd. LEXIS 71, at *9 (Dec. 16, 2020). The Court finds she did and orders Lowe's to provide a panel of physiatrists.[4]

---

[4] The Court notes Lowe's argued Dr. Park did not make a referral to pain management. However, the Dispute Certification Notice specifically listed "medical benefits" as an issue, and Ms. Hull Eager

4

*Ankle surgery*

Under Tennessee Code Annotated section 50-6-204(a)(3)(H), treatment recommended by an authorized physician is presumed medically necessary. As the Appeals Board explained in *Morgan v Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17-18 (Aug. 31, 2016), that presumption may be rebutted under two potential standards. First, if the authorized physician recommended treatment but did not explicitly follow the ODG Guidelines, then the employer need only rebut the presumption by a preponderance of the evidence. But, if the authorized physician explicitly follows the Guidelines, then the employer must rebut the presumption by clear and convincing evidence.

Here, Dr. Grear did not explicitly reference the ODG Guidelines when he recommended surgery. Thus, Lowe's need only rebut the presumption of necessity by a preponderance of the evidence. The Court finds Lowe's did not.

Rather, Lowe's own Utilization Review actually confirmed the medical necessity of the surgery. The reviewing physician certified the surgery as medically necessary, and he did so by *explicitly following* the ODG Guidelines. That determination was made after a review of records that included the office note of April 14, 2020, documenting the pop.

Lowe's relied upon the pop as the cornerstone of its defense, but the Court finds the argument without merit. First, Dr. Grear testified that he believed the pop had not "changed anything," and the need for surgery existed before the pop. In short, Ms. Hull Eager's "diagnosis for surgery [was] still the same" after the pop.

Second, Lowe's cited authority that an employee's negligent act might break the chain of causation, but at the same time it conceded Ms. Hull Eager "never specifically stated what she was doing when she felt the pop." Though Tennessee law holds an employee's negligence might constitute an intervening cause, some act exhibiting a lack of reasonable care must exist for a finding of negligence. *See Anderson*, 259 S.W.3d at 698. Lowe's failed to prove a lack of reasonable care on Ms. Hull Eager's part. Thus, the Court finds the April 14, 2020 pop was not an intervening event and did not break the chain of causation.

It follows then that Ms. Hull Eager established she would likely prevail at a hearing on the merits regarding her request for ankle surgery, and the Court orders Lowe's to pay for it.

---

specifically asked for a panel of physicians and treatment ordered by the physician in her Petition for Benefit Determination. In *Phillips v. Carolina Construction Solutions*, 2016 TN Wrk. Comp. App. Bd. LEXIS 10, at *19 (Feb. 26, 2016), the Court is to determine what issues have been certified in the Dispute Certification Notice by considering the document as a whole. Here, the mediator checked medical benefits as an issue. Further, the parties briefed and argued the merits of the referral to Dr. Sorensen at the Expedited Hearing.

*Penalty referral*

Tennessee Code Annotated section 50-6-118(a)(11) provides that an employer might be penalized for failing to timely provide medical treatment recommended by the authorized treating physician. Here, the Court finds Lowe's did not timely provide a physiatrist evaluation recommended by Dr. Park and did not timely provide the surgery recommended by Dr. Grear. Lowe's authorized both physicians to treat Ms. Hull Eager. Thus, the Court refers Lowe's to the Compliance Program for consideration of a penalty.

Finally, Ms. Hull Eager argued for attorney's fees for wrongful denial under Tennessee Code Annotated section 50-6-226(d)(1)(B) in her brief. The Court will consider that request upon proper motion supported by counsel's affidavit for fees and with proper notice to Lowe's.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Lowe's shall provide Ms. Hull Eager a panel of physiatrists as recommended by Dr. Parks and authorize and pay for the surgery recommended by Dr. Grear.

2.  The Court refers Lowe's to the Compliance Program for consideration of a penalty under Tennessee Code Annotated section 50-6-118(a)(11) for failure to timely provide medical treatment recommended by the authorized treating physicians.

3.  The Court sets a Status Hearing for **Monday, October 25, 2021, at 10:00 a.m. Central Time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.

4.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED August 16, 2021.**

_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:
1. Deposition of Dr. Benjamin Grear
2. Collective Medical Records

Technical record:
1. Petition for Benefit Determination—DOI: 5/23/16
2. Dispute Certification Notice—DOI: 5/23/16
3. Request for Expedited Hearing—DOI: 5/23/16
4. Petition for Benefit Determination—DOI: 3/29/18
5. Dispute Certification Notice—DOI: 3/29/18
6. Request for Expedited Hearing—DOI: 3/29/18
7. Motion for Consolidation
8. Order of Consolidation
9. Motion to Continue Expedited Hearing
10. Order Granting Motion to Continue
11. Employee's Expedited Hearing Brief
12. Employer's Expedited Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 16, 2021.

| Name | Email | Service sent to: |
|------|-------|------------------|
| Monica R. Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com |
| Dennis Sadler and Kimberly Perry, Employer's Attorneys | X | Dennis.sadler@leitnerfirm.com kimberly.perry@leitnerfirm.com |
| Compliance Program | X | WCCompliance.Program@tn.gov |

_Penny Shrum_

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

7



<u>Expedited Hearing Order Right to Appeal</u>:

       If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____        ☐ Motion Order filed on _____

☐ Compensation Order filed on_____        ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee
Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____
*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation  $ _____ per month    Child Support  $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe:_____

11. My debts are:

Amount Owed    To Whom

_____    _____

_____    _____

_____    _____

_____    _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____ .

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)    RDA 11082